445 So.2d 67 (1984)
STATE of Louisiana, Appellee,
v.
Patric P. HUSTON, Appellant.
No. 15,758-KA.
Court of Appeal of Louisiana, Second Circuit.
January 16, 1984.
McConnell, Harris & Associates by Charles E. McConnell, Springhill, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Henry N. Brown, Jr., Dist. Atty., Benton, Randy D. Elkins, James M. Johnson, Asst. Dist. Attys., Minden, for appellee.
Before JASPER E. JONES, FRED W. JONES, Jr. and SEXTON, JJ.
SEXTON, Judge.
The defendant prosecutes this appeal subsequent to a "Crosby plea"[1] to the offense of Possession of Schedule II Controlled Dangerous Substances. We reverse.
Subsequent to entering the guilty plea and reserving the right to appeal the ruling *68 of the trial court on the motion to suppress, the defendant was sentenced to two years at hard labor. This sentence was suspended and the defendant was placed on active probation, and was fined $1,000.
On April 20, 1982, the defendant was traveling east on Interstate 20. He stopped on the shoulder for some unexplained reason and became stuck in the soft right shoulder of the road. A state trooper, William E. Bobbitt, summoned by calls on the "CB" that a truck was on fire, arrived at the scene. The defendant, with the aid of two other truck drivers from his company, was in the process of trying to get the truck back on the Interstate when the state trooper arrived. Apparently in the process of trying to extricate the truck, the tires on the pavement section of the shoulder had burned to the cords.
The officer approached the truck and noted the glassy-eyed appearance of the driver. He asked the defendant to get out of the truck. The defendant stumbled down from the truck and the trooper noted a strong odor of alcohol on his breath. The defendant performed very poorly on the field sobriety test and was arrested for DWI. The defendant was placed in the back of Trooper Bobbitt's car and a wrecker was summoned. Officer Bobbitt entered the cab of the truck and completed a brief inventory. In the process thereof he noted on the "inventory report" the presence of a suitcase in the sleeper section of the cab and two briefcases on the right seat of the cab.
Trooper Bobbitt was joined on the scene by his shift supervisor, Lt. Billy J. Wiggins, who upon being appraised of the situation told Bobbitt to take the defendant to the police station in Minden to run a breath test for an alcohol level. Lt. Wiggins stayed at the scene to wait for the wrecker. At the trial of the motion to suppress, Lt. Wiggins stated that he entered the cab of the truck and located the log book folder on the console between the seats. He stated that upon opening the log book he found a package of yellow capsules in the cover of the book.
The only fact in contention in this case is the location of the log book and pills. Trooper Bobbitt testified he did not notice the log book on the console, while the defendant testified that he always kept the log book in a holder in the driver's door. He also stated that the pills were in his briefcase and not in the log book.
In denying the defendant's motion to suppress, the trial court found the search involved was incidental to a lawful arrest. We have not been favored with a brief from the State at this juncture but we note that in argument to the trial court, the Assistant District Attorney conceded that the search and seizure could not be sustained on the basis of having resulted from an inventory, and rather relied on the "plain view" exception.
The search and seizure here cannot be sustained as being a search incident to a lawful arrest. While the United States Supreme Court held in New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), that the police may search the passenger compartment of a vehicle, including the contents of containers therein, contemporaneous to an arrest, the Louisiana Supreme Court has specifically stated in State v. Hernandez, 410 So.2d 1381 (La. 1982) that Belton does not apply where the defendant has been removed from the scene.
Thus, only if the seizure is valid as a plain view exception may it be sustained. In order for a plain view seizure to be sustained, the intrusion must first of all be lawfuli.e., the officer must lawfully be in a position from which he can view a particular area. Secondly, incriminating evidence must be inadvertently discovered i.e., the officer must not know in advance of the location of the evidence nor have formulated an intent to seize it. Finally, there must be a reasonable probability that the item viewed is incriminating evidence or contraband. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Texas v. Brown, ___ *69 U.S. ___, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983).[2]
It is clear in this case that the second and third criteria for the "plain view" exception are not at issue, if the testimony of Lt. Wiggins is accepted. While the trial judge did not specifically so state, the tenor of his reasons for judgment seem to imply that he was operating from the version of events as related by Lt. Wiggins. In any event, we accept that version as the most plausible. The defendant was obviously not in control of his faculties at the time of his arrest. Furthermore, he denied on initial questioning at the motion to suppress that the pills even existed. It was only after a conference with his counsel that he stated that they were in the truck. Also, there were two drivers from the same company at the scene when Trooper Bobbitt arrived. The defendant, in our view, was evasive when queried about their identity, stating that the company had approximately 100 drivers and that he did not know all of their names. He certainly had more than an ample opportunity to ascertain their names from the time of his arrest to the date of this hearing.
Therefore, we determine that the pills were inadvertently discovered by Lt. Wiggins in his examination of the log book. Obviously, it was readily apparent that the pills were contraband. The dispositive issue, then, is the threshold criteria of the "plain view" exception. Was the intrusion lawful and was Lt. Wiggins in a place where he had a right to be? More simply statedwas his examination of the log book appropriate under the circumstances?
Lt. Wiggins testified that he examined the log book in an effort to obtain some explanation for the defendant's erratic behavior. He was interested in what distances the defendant had been driving over what period of time.
The log book, which is maintained by the driver, is required by federal regulation of the Interstate Commerce Commission. 49 CFR, § 395.8 (1983). The ICC sets by regulation the number of hours a driver can safely operate his vehicle without a break. 49 CFR, § 393 (1983). The log sheets are filed regularly with the driver's home terminal, and then forwarded to the carrier's principle place of business. The records must be retained for 12 months and are subject to inspection by the designated agents of the Commission. 49 U.S.C. § 11144 (1982).
Since a warrantless search and seizure occurred in this case, the burden is on the State to show that this action was justified under an exception to the warrant requirement of the Fourth Amendment of the United States Constitution, and Art. 1, § 5 of the Louisiana State Constitution. State v. Hatfield, 364 So.2d 578 (La. 1978). In this case the State argued at the motion to suppress that the defendant had no expectation of privacy in the log book and contended that the log book was kept for the purpose of law enforcement officer's inspection. The State put on no evidence that justifies this statement, and as we previously noted, has not favored us with a brief to expound on this argument or cite authority showing the State officer's right to examine the log book under these circumstances.
Our research has revealed little jurisprudence on the subject. We are aware of Midwest Growers Co-Op Corporation v. Kirkemo, 533 F.2d 455 (9th Cir.1976), which holds that for the Commission to enforce its statutory right to inspect these records it must seek mandatory injunction in the district court. Midwest Growers thus holds that the Commission has no statutory authority to issue an administrative search warrant.
*70 Obviously this jurisprudence is of little assistance. Since the burden is on the State to establish a valid exception to the warrant requirement and since it has not done so either evidentiarily or jurisprudentially, we have no recourse but to reverse the judgment of the trial court.
For the reasons aforesaid, the ruling of the trial court on the motion to suppress is reversed. Accordingly, the conviction and sentence are likewise reversed and this cause is remanded to the district court for further proceedings not inconsistent herewith.
REVERSED and REMANDED.
NOTES
[1] State v. Crosby, 338 So.2d 584 (La.1976) allows the entering of a plea of guilty and the reservation of the right to appeal the overruling of a motion to suppress.
[2] Prior to Texas v. Brown, the third requirement was generally considered to be that it be "readily apparent" that the item seized was either evidence or contraband. Texas v. Brown modified this requirement. However, from our reading of that opinion, we are unable to find a ready label for the third requirement. Thus, the characterization of that requirement as a "reasonable probability" is the author's interpretation of Texas v. Brown.