618 So.2d 680 (1993)
STATE of Louisiana, Appellee,
v.
Pamela Washington GRIFFIN, Appellant.
No. 24,795-KA.
Court of Appeal of Louisiana, Second Circuit.
May 5, 1993.
Rehearing Denied June 17, 1993.
*685 Bobby L. Culpepper, Jonesboro, Richard Gallot, Ruston, for appellant.
Robert W. Levy, Dist. Atty., Farmerville, A. Shawn Alford, Asst. Dist. Atty., for appellee.
Before HIGHTOWER, STEWART and WILLIAMS, JJ.
STEWART, Judge.
Pamela Griffin was convicted of first degree murder and sentenced to life imprisonment. She appeals her conviction and sentence, asserting 28 assignments of error. We affirm.

Facts
On August 25, 1991, Pamela Griffin met Gary Braggs at the house of a friend. After socializing together for a while, Griffin and Braggs drove in his pick-up out into the woods where they parked, intending to engage in sexual activities and smoke "crack" cocaine. They undressed and began to smoke the "crack." After about two hours, Griffin got out of the truck, telling Braggs that she needed to use the restroom. When she got to the back of the truck, she asked Braggs to join her and told him she thought she heard something. As he leaned over, looking through the bushes, she shot him in the back of the head with a gun that she had taken from underneath the truck seat. After Braggs fell to the ground, she shot him once more in the head. He then played dead until she *686 jumped in the truck. As she drove off, he got up and ran, wearing only tennis shoes, through the woods to a nearby house in search of help. Upon seeing the naked and bleeding man outside, the occupants of the house summoned the police.
Meanwhile, Griffin, also naked, continued her escape. After driving the truck into a tree, she managed to reach the parish road where she lost control of the vehicle again and ran it into a ditch. She apparently dressed, got out of the truck which she left with its engine and lights on, took Braggs clothes and started walking down the road. Approximately 1/4 to 1/2 mile later, she threw the clothes down in the road. At this point, Craig Harris came by in his company truck. He had seen the wreck and stopped to ask Griffin if she needed help. Pointing the pistol at him, she forced him out of the truck, and fired two shots at him, one of which struck Harris in the head. A short time later, passing motorists found him lying in the road and took him to a hospital where he died.
When the police investigated the disturbance at the house, the information obtained from Braggs led to the issuance of an A.P.B. for the arrest of Griffin. The next day she was found hiding in the bathtub of a friend's house in El Dorado, Arkansas, arrested and returned to Louisiana.
Griffin was indicted by the Union Parish grand jury on charges of first degree murder for which the state sought the death penalty. After a trial, held on April 20-25, 1992, the defendant was convicted as charged and sentenced to life imprisonment. Griffin appeals her conviction, asserting that the trial court erred in numerous rulings on motions, jury challenges, and the admissibility of testimony and other evidence. We disagree.

Discussion
ASSIGNMENTS OF ERROR 1, 2 & 14
In these assignments, Griffin asserts that the trial court erred in (1) denying her motion for a change of venue on February 21, 1992; (2) denying defendant's supplemental motion for a change in venue; and (3) failing to grant her motion for a change of venue after the jury selection.
A review of the record indicates that only two motions to change venue were urged. A written motion to change venue, filed on January 27, 1992, was argued on February 21, 1992. In support thereof, defendant attached copies of newspaper articles to suggest that area publicity made it impossible for her to receive a fair trial. At the conclusion of the jury selection, defendant reurged the motion, orally. Assignments 2 and 14 both apply to the oral motion made at the conclusion of the jury selection.
A change of venue shall be granted when a defendant proves that, by reason of prejudice existing in the public mind, or for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending. LSA-C.Cr.P. Art. 622. For a detailed discussion of the various factors to be considered in determining whether a change of venue is appropriate, see State v. Henderson, 566 So.2d 1098, 1102 (La.App.2d Cir.1990); State v. Hall, 549 So.2d 373 (La.App.2d Cir.1989), writ denied, 556 So.2d 1259 (La.1990); and State v. Brown, 496 So.2d 261 (La.1986).
The defendant bears the burden of proving that he cannot obtain a fair trial in the parish where the prosecution is pending. State v. Henderson, supra. This burden requires a showing of more than mere knowledge by the public of the facts surrounding the offense. State v. Giovanni, 409 So.2d 593 (La.1982); State v. Henry, 446 So.2d 1308 (La.App.2d Cir.1984). The defendant who seeks a change of venue must show that such prejudice exists in the collective mind of the community that a fair trial is impossible. State v. Clark, 442 So.2d 1129 (La.1983); State v. Neslo, 433 So.2d 73 (La.1983).
The trial court has great discretion in granting or denying a motion for change of venue. State v. Henderson, supra; State v. Flood, 301 So.2d 637 (La.1974), cert. denied, 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975); State v. Hall, supra. A reviewing court may nevertheless make an independent evaluation of the facts to *687 determine whether the accused received a trial which was free and unfettered by outside influences. State v. Henderson, supra; State v. David, 425 So.2d 1241 (La. 1983), cert. denied after remand 476 U.S. 1130, 106 S.Ct. 1998, 90 L.Ed.2d 678 (1986).
In the instant case, the defendant offered in support of its written motion, copies of six newspaper clippings. Four of the articles were published near the time of the offense and merely reported that either a suspect was sought in the shootings or that Griffin had been arrested and was being returned to Louisiana from Arkansas. The fifth article, published in October 1991, reported that Griffin had entered a plea of not guilty by reason of insanity; this article detailed the alleged facts of the shootings but was not inflammatory. The sixth article, published in January 1992, reported that the trial was postponed until April 1992. No further evidence was adduced at the hearing on this motion.
These articles detail the alleged facts surrounding the offense and Griffin's arrest. Although there was some discussion in the news articles about the victim's character, there was nothing prejudicial about Griffin, other than the facts alleged. This showing is insufficient to establish the prejudice necessary to require a change in venue. The trial judge correctly denied the written motion. See and compare, State v. Brown, State v. Bell, 315 So.2d 307 (La.1975) and State v. Henry, supra.
After jury selection was completed, the defendant orally reurged the motion to change venue. Defense counsel offered the transcript of the voir dire and argued that 60 of the 63 potential jurors called said they had heard or read something about the case and that, of that number, at least 20 said they had a fixed opinion.
The record reflects that nine prospective jurors were excused for cause because of a fixed opinion about the case. Four of these nine knew the victim or his family. Of the remaining five, two testified that they had not heard talk in the community about the case.
Our review of the voir dire transcript reveals that the prospective jurors' familiarity with the case was moderate at best and they largely denied that any form of publicity affected their ability to answer and judge fairly. Only the severity and notoriety of the offense, and the prospective juror's familiarity with the publicity militate in Griffin's favor. Griffin made no showing that the nature or frequency of publicity, the source of the information, or other factors prejudiced the collective mind of the community.
The trial court's oral remarks after the hearing indicate that it carefully observed the tenor and texture of the proceedings. It was in a superior position to determine to what extent the publicity in this case affected the potential jurors. Based on the record before us, we find no abuse of discretion in the trial court's ruling. See and compare, State v. Wilkerson, 403 So.2d 652 (La.1981).
These assignments present no reversible error.
ASSIGNMENTS OF ERROR 3 & 26
The trial court erred in finding that the Prieur notice was sufficient and in allowing the admission of "other crimes" evidence.
At the hearing on various pretrial motions, the defendant argued that the Prieur notice failed to specify which exception to the general exclusionary rule was the basis for introducing evidence of other crimes.
The "other crimes" evidence intended to be used was listed as: (1) possession of cocaine; (2) attempted first degree murder of Gary Braggs; (3) failure to maintain control of Gary Braggs' vehicle; (4) reckless operation of Gary Braggs' vehicle; (5) illegal carrying of a weapon; (6) extortion; (7) prostitution; and (8) illegal possession of stolen goods; and (9) possession of drug paraphernalia.
The notice stated that the purpose of using the evidence was to establish
the defendant's motive, and/or opportunity, and/or intent, and/or preparation, and/or plan, and/or knowledge, and/or *688 identity, and/or absence of mistake or accident, and/or the conduct relates to conduct that constitutes an integral part of the act or transactions [sic] that is the subject of the present proceeding.
The trial court found that the state intended to rely upon all of the exceptions listed and that, because the evidence constituted an integral part of the subject act, Prieur notice was not even required. We agree.
Article 404 of the Louisiana Code of Evidence states in pertinent part:
B. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
This article neither codifies nor affects the law of other crimes evidence, as set forth in State v. Prieur, 277 So.2d 126 (La.1973); State v. Davis, 449 So.2d 466 (La.1984); State v. Moore, 278 So.2d 781 (La.1973) and their progeny. LSA-C.E. Art. 1103. However, the notice requirements of Prieur and its progeny are not applicable to evidence of offenses which constitute part of the res gestae. State v. Goza, 408 So.2d 1349 (La.1982). The Code of Evidence article 404 B(1) phrase, "or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding", refers to that which was formerly called "res gestae". Comment (m), LSA-C.E. Art. 404. Accordingly, Prieur notice is not required for evidence of offenses which are an integral part of the act or transaction that is the subject at bar. See also, LSA-C.Cr.P. art. 720.
In State v. Brewington, 587 So.2d 189 (La.App. 3d Cir.1991), reversed and remanded, 601 So.2d 656 (La.1992), appeal after remand, 605 So.2d 4 (La.App. 3d Cir. 1992), the court of appeal found that, during trial for second degree murder, testimony about defendant's claim of cocaine possession was inadmissible "other crimes" evidence. The appellate court reversed the defendant's conviction for second degree murder and remanded for a new trial. In its per curiam reversal of the appellate judgment, State v. Brewington, 601 So.2d 656 (La.1992), the Louisiana Supreme Court stated the following (citations omitted):
This court has approved the admission of other crimes evidence when it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it. In such cases, the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place. The concomitant other crimes do not affect the accused's character, because they were done, if at all, as parts of a whole; therefore, the trier of fact will attribute all of the criminal conduct to the defendant or none of it. And, because of the close connection in time and location, the defendant is unlikely to be unfairly surprised.
The other crimes, referred to in the instant Prieur notice and described during trial, constituted one continuous transaction. The connected string of offenses began with the drug use and sexual activity, the shooting of Braggs and theft of his truck, gun and clothes. Griffin continued the crime spree by wrecking Braggs' truck, threatening Harris with the stolen gun to get him out of his truck, shooting Harris, and fleeing down backroads to Arkansas in another stolen truck. Each crime occurred as a result of, or in close time and proximity with, a previous crime. All of these offenses took place within a short time period, and there existed a very close connexity between the charged offense and the other crimes. See State v. Haarala, 398 So.2d 1093 (La.1981); State v. Brown, *689 340 So.2d 1306 (La.1976); State v. Edwards, 412 So.2d 1029 (La.1982).
Moreover, the evidence of "other crimes" was of probative value on the issues of Griffin's intent, opportunity, preparation, plan, knowledge, identity, and absence of mistake or accident. Griffin's defense was that her "crack" intoxication prevented her from forming the requisite specific intent. Therefore, the question of her intent was both an element of the offense and a controverted issue.
For the foregoing reasons, we find no error in the trial court's rulings regarding this evidence of other crimes. These assignments of error lack merit.
ASSIGNMENT OF ERROR 4
Griffin argues that the search, which resulted in the seizure of the murder weapon from the home of Grant Roberson in El Dorado, Arkansas, was illegal. She argues that (1) the search was illegal because Roberson did not consent to the officer's entry into the house; and (2) she had not been advised of her Miranda rights before she told the police where the gun was located. Griffin contends that, for these reasons, the trial court erred in denying her motion to suppress the weapon.
The transcript of the motion to suppress hearing reveals the following facts: Through information sources in El Dorado, Arkansas, Patrolman Bennie Brumley of the El Dorado Police Department determined that Griffin was hiding out in the residence of Grant Roberson. Patrolman Brumley, Sergeant Terry Canterbury, and Officer Kevin Holt participated in the arrest of Griffin. The three went to Roberson's house. Officer Holt secured the back of the residence. Canterbury and Brumley went to the front door where Brumley knocked on the door with his flashlight.
Roberson opened the door and the officers asked him about the presence of the defendant. He pointed toward the back of the "shotgun" house. Canterbury asked if they could enter and search for Griffin, and Roberson said okay. Canterbury stayed with Roberson while Brumley searched the house. Brumley looked into the bathroom and found Griffin under a pile of clothes in the bathtub. He testified that he saw what appeared to be the handle of a gun protruding from a zippered pouch which was on a small table near the bathtub. For his own safety, his attention then became fixed on Griffin, and he concentrated on getting her out of the bathroom without allowing her a chance to grab the gun. He walked her back to Sgt. Canterbury who informed her of the felony arrest warrant from Louisiana. She was then handcuffed but not advised of her Miranda rights. Sgt. Canterbury asked her where was the gun. Brumley testified that he told the sergeant where he had seen the gun, and then Griffin responded the gun was in the bathroom. Canterbury testified that he heard Brumley say something about the gun, Griffin said the gun was in the bathroom, and then Brumley said the gun was in the bathroom. Both officers agreed that, after this brief exchange, Brumley immediately returned to the bathroom and, within a few seconds, retrieved the pouch which contained the gun.
Cross-examination of Canterbury and Brumley revealed that the initial police report, handwritten by Brumley and approved by his sergeant, Canterbury, (1) omitted any reference to Brumley's observation of the gun in the bathroom; (2) indicated that both officers asked Griffin about the location of the gun; (3) omitted other details to which the officers testified at the hearing.
The trial court stated the following in its ruling on the motion to suppress:
Of course, the weapon was observed by Patrolman Brumley. It was in plain view. Thethey could have got it without any question. The residence was that of Grant Roberson. It was not a residence of not even a place of abode of this defendant. It was being used by her as a hideout. So her consent for the search was not necessary. The argument that defense makes as to her response without having been given her Miranda warnings, as to that argument, I feel that the evidence shows that it was Patrolman Brumley who made the response because he already knew where *690 the weapon was himself. It was an independent response and regardless of whether Mrs. Griffin said anything at all or not, the response was made by Patrolman Brumley and action would have been taken regardless of what her statement was. I feel that this is a valid seizure of the weapon. I don't think there is any constitutional impediment to it.
Griffin argues in brief that Roberson merely acquiesced to the police authority to enter his home, but did not give his consent. She asserts that she was adversely affected by the search. Roberson did not testify at either the hearing or the trial. Griffin, the subject of the arrest warrant, claims that she was adversely affected by the entry into Grant Roberson's house.
We note first that the record supports a finding that Roberson consented to the officers' entry into his home. Both Brumley and Canterbury testified that Roberson gave his consent for them to search his house for Griffin. However, assuming arguendo the absence of consent, we agree with the trial court: Griffin's consent to the search was not necessary as she was not in her residence or place of abode but rather was using the home of Roberson as a hideout.
As in State v. Barrett, 408 So.2d 903 (La.1981), Griffin, and not Roberson, is the party claiming that she has been adversely affected because Roberson's constitutional right to be secure in his house against an unreasonable search was violated. However the Louisiana Supreme Court has determined that, within the meaning and purpose of LSA-Const. Art. 1, § 5 (1974), the subject of an arrest warrant in the house of a third person where entry was accomplished without a search warrant or exigent circumstances or consent, is not "adversely affected" so as to require suppression of evidence seized incidental to his lawful arrest. Barrett, supra, at 905. Accordingly, even if consent to enter the house were not present, Griffin has no standing to assert a violation of Roberson's constitutional rights.
Griffin also argues that, although she was already handcuffed, the officers gave her no Miranda warning prior to asking her about the gun. The trial court found that the seizure was valid under the plain view doctrine. We agree.
For a detailed description of the search warrant requirement and the "plain view" exception thereto, see State v. Neyrey, 383 So.2d 1222 (La.1979); State v. Huston, 445 So.2d 67 (La.App.2d Cir.1984); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). In essence, the plain view doctrine renders reasonable a warrantless search and seizure of evidence where (1) the officer is lawfully in a position from which he can view a particular area, (2) the incriminating evidence is inadvertently discovered, and (3) it is reasonably probable that the observed item is incriminating evidence or contraband. Coolidge v. New Hampshire, supra; State v. Neyrey, supra; See Huston, supra, 445 So.2d at 68.
In this case, while Brumley was lawfully within Roberson's residence, he saw the handle of the gun protruding from a pouch on a table in the bathroom where Griffin was hiding. Given the proximity of the weapon to Griffin, there was a reasonable probability that the object was incriminating evidence. The record support's the trial court's determination that Brumley's view and seizure of the weapon were events independent of Griffin's response to the question about the gun. For these reasons, the trial court properly found the seizure was valid and denied Griffin's motion to suppress. This assignment has no merit.
ASSIGNMENT OF ERROR 5
By this assignment, Griffin asserts that the trial court erred in overruling her motion to exclude consideration of the death penalty. She asserts that the state's reliance on the armed robbery, committed during the murder, as an aggravating circumstance needed to consider the death penalty, constitutes "double counting." She argues that, because armed robbery is an element of first degree murder pursuant *691 to LSA-C.Cr.P. Art. 905.4, it is unfair to count against a defendant a necessary element of the crime in order to consider the death penalty.
The jurisprudence is well settled that such "double counting" is not violative of the Louisiana or U.S. constitutions. Lowenfield v. Phelps, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (U.S.1988); State v. Flowers, 441 So.2d 707 (La.1983), cert. denied, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476, habeas granted, 779 F.2d 1115, cert. denied, 475 U.S. 1132, 106 S.Ct. 1661, 90 L.Ed.2d 204, appeal after remand, 509 So.2d 588 (La.App. 5th Cir.1987); State v. Clark, 387 So.2d 1124 (La.1980), cert. denied, 449 U.S. 1103, 101 S.Ct. 900, 66 L.Ed.2d 830, rehearing denied, 450 U.S. 989, 101 S.Ct. 1530, 67 L.Ed.2d 825; State v. Loyd, 489 So.2d 898 (La.1986), stay granted, 491 So.2d 1348, (La.1986), cert. denied 481 U.S. 1042, 107 S.Ct. 1984, 95 L.Ed.2d 823, rehearing denied, 483 U.S. 1011, 107 S.Ct. 3244, 97 L.Ed.2d 749; and State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798, rehearing denied, 495 U.S. 966, 110 S.Ct. 2579, 109 L.Ed.2d 761. Accordingly, we find no merit to this argument.
Griffin also contends that the decision of the district attorney to seek the death penalty was arbitrary and capricious and an abuse of the discretion granted by LSA-C.Cr.P. Art. 61. She argues that the death penalty would have been disproportionate to the crime committed.
In pertinent part, LSA-C.Cr.P. Art. 61 provides:
The district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute.
Griffin has cited, and we have found, no statutory or jurisprudential authority for the proposition that the district attorney's C.Cr.P. Art. 61 decision to seek the death penalty is subject to review for abuse of discretion.
The trial court correctly denied the defendant's motion. This assignment has no merit.
ASSIGNMENTS OF ERROR 6, 8, 9, 10, & 11
In these assignments, the defendant submits the trial court erred in failing to excuse as jurors, Johnny Walker, Marie Burroughs, Myra Williams, Miller Booth, and Donald Pace for cause.
Refusal to excuse for cause is not an abuse of discretion, notwithstanding that the juror has voiced an opinion seemingly prejudicial to the defense, where on further inquiry or instruction, the juror has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. LSA-C.Cr.P. Art. 797; State v. Welcome, 458 So.2d 1235 (La.1983), cert. denied, 470 U.S. 1088, 105 S.Ct. 1856, 85 L.Ed.2d 152 (1985); State v. Wilson, 469 So.2d 1087 (La.App.2d Cir. 1985), writ denied, 475 So.2d 778 (La. 1985).
Upon questioning by defense counsel, juror Johnny Walker stated that he might hold it against the defendant if she didn't testify and if it were a close case, the fact that she didn't testify might lead him to vote guilty. Upon further questioning by the state, and the trial judge, Walker agreed that he could follow the judge's instruction as to the applicable law and not consider defendant's silence as evidence against her.
Marie Burroughs was initially confused during the voir dire. At first she believed that the defendant would have to prove that she was not guilty. When the law was explained to her, however, she readily agreed that she would be the type of juror she would want sitting on her case if she were on trial. She then testified that the only way she would vote to convict would be after hearing the evidence and after being convinced by the state that the defendant was guilty.
Jurors Myra Williams, Miller Booth and Donald Pace all expressed pre-formed opinions due to the accounts of the crime published in the local papers. Ms. Williams was somewhat influenced by what *692 she had read in the newspapers. She stated that she didn't have a fixed opinion but, after questioning by defense counsel, indicated that if she had to vote before hearing any evidence, she would probably vote guilty. After the state explained the presumption of innocence principle and how the burden of proof operates, she stated that she adhered to those principles and would vote according to those instructions.
Miller Booth told defense counsel that he was not 100 percent sure he could put aside what he had heard about the case. Later, when questioned by the judge, Booth assured the court that he could be impartial and put aside the things he had heard about town regarding the case.
Donald Pace knew Craig Harris because he had been a customer at the store where Harris worked. Pace came to court believing the defendant was guilty based on what he had heard about the case and, when questioned by defense counsel, he said that he might have that opinion in the back of his mind during deliberations if he were selected as a juror. When questioned by the state, he admitted that the media was often incorrect and assured the court that if he was selected, he would lay his opinion aside and follow the presumption of innocence.
On this record, we find that each juror, upon rehabilitation by the trial judge or the state, demonstrated an ability to decide the case impartially. The trial judge did not err in denying these challenges for cause.

ASSIGNMENTS OF ERROR 7 & 12
The defendant asserts that the trial court erred in excusing Carolyn Williams and Sandra Griffin as jurors for cause. Carolyn Williams was very nervous and upset throughout the questioning. She was confused by the proceedings, stating that she didn't understand the meaning of a trial. At first she said that she did not know the defendant. Later she admitted they were friends and explained her earlier denial on the basis that she didn't know Griffin was "involved". When questioned by defense counsel, she answered that she could follow the judge's instructions, consider the death penalty if necessary, and be impartial despite her admitted friendship with the defendant. Her responses would change, however, depending upon how the questions were asked, as if she wanted to give "correct" answers. After much wavering, she finally stated that the friendship would influence her no matter what the law was and under no circumstances would she vote for the death penalty.
Sandra Griffin was challenged for cause after expressing that her religious belief system forbade consideration of the death penalty. Although she indicated to defense counsel that, even though she was opposed to capital punishment, she would be open minded and consider it if necessary, she was unequivocal in her responses to the trial court. She stated that she would automatically vote against the imposition of the death penalty regardless of the evidence presented.
A judge is vested with broad discretion in ruling on a challenge for cause and his ruling will not be disturbed on appeal absent a showing of an abuse of discretion. Only where there is resulting prejudice to the accused based upon the judge being arbitrary or unreasonable will the court's ruling be reversed. State v. Widenhouse, 582 So.2d 1374 (La.App.2d Cir.1991), writ denied, 586 So.2d 567 (La. 1991), cert. denied, ___ U.S.___, 112 S.Ct. 1274, 117 L.Ed.2d 500 (1992).
In this case, Carolyn Williams was properly excused for cause. Her nervous temperament and friendship with the defendant seriously impeded her ability to understand the proceedings and be impartial. Likewise, Sandra Griffin was properly excused. As in State v. Brown, 479 So.2d 464 (La.App. 1st Cir.1985), an excusal for cause is proper where a prospective juror's religious beliefs demonstrate an inability to render a verdict according to the law. Sandra Griffin's statement that she would automatically vote against the death penalty demonstrated her inability to render a verdict according to the law.
The trial judge did not err in excusing either of these prospective jurors for cause.
*693 ASSIGNMENT OF ERROR 13
The defendant assigns as error the trial court's denial of her "Batson" challenge. She argues that the state did not successfully rebut her prima facie case which established that the state used peremptory challenges to purposefully discriminate on the basis of race.
A peremptory challenge by the state shall not be based solely on the basis of the race of the juror. LSA-C.Cr.P. Art. 795(B); Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); LSA-C.Cr.P. Art. 795. In order to establish a prima facie case of race-based discrimination in the state's use of peremptory exceptions, the defendant must show (1) that she is a member of a cognizable racial group; and (2) facts and relevant circumstances which indicate that the state exercised peremptory challenges to exclude veniremen from the jury on the basis of race. If the defendant makes the prima facie showing, the burden shifts to the state to come forward with racially neutral explanations for challenging the black jurors. For a more detailed discussion of Batson and its requirements, see State v. Mims, 505 So.2d 747 (La.App.2d Cir.1987).
Examination of the record indicates that the state exercised peremptory challenges against nine black prospective jurors and accepted four black prospective jurors. The jury was ultimately composed of nine whites, three blacks, and two alternates, one of which was black.[1]
Griffin, who is black, complains that seven of the nine were excused because their race is the same as her own. These seven are: Mary Archie, Willie Hendricks, Trether Phillips, Elouise Payne, Wayne Gafford, Mary Watley, and Duke E. Fields, Jr.
The trial court found that the defendant had not made a prima facie showing of discrimination based on the lack of a pattern of discriminatory strikes and the presence of four black persons on the jury. Nevertheless, the trial court allowed the state to set forth its reasons for its use of the seven challenges.
The state gave reasons for the exclusion of each black prospective juror which were independent of his or her race. After the state's reasons were set forth, the trial court found that each explanation given by the state was a sufficient, racially neutral explanation of its peremptory challenge on each of the seven persons for whom the defendant objected to the peremptory challenge.
The state explained that it used each peremptory exception for the reasons which included the following:
(1) Mary Archie indicated that she had a handicapped husband who was unable to pick up or care for her five month old child, or for himself, and that there was no one else available to take care of them. The state believed that she would be unable to concentrate on the issue and that temperament was not suited to be a juror.
(2) Willie Hendricks said that he knew the defendant, and that he had served on two prior juries in criminal cases. The state obtained information that neither of the criminal cases which Hendricks named had been tried. Because Hendricks had lied, the state was suspicious of his motives for wanting to serve on the jury.
(3) Trether Phillips was an older woman who didn't seem able to understand and comprehend the proceedings and who gave hesitant responses concerning the application of the death penalty. The state articulated the reasons underlying its concerns about her intellect and stamina, as well as her views on the death penalty.
(4) The state dismissed Elouise Payne because it determined that she had lied about the arrest and conviction records of her family members and because she expressed great reservations about the death penalty.
(5) Wayne Gafford said that, because of memory loss resulting from a head injury, he thought he knew the defendant but couldn't really remember. After *694 it obtained information that Gafford knew the defendant well, the state dismissed him because either he lied about his relationship with the defendant or he suffered from sufficient memory loss to render him an unsuitable juror.
(6) Mary Watley was dismissed based on her hesitant, wavering responses about the death penalty and because of her temperament. The state believed that her smiles and giggles, during death penalty questioning, indicated nervousness and a reluctance to apply the law.
(7) Duke Fields, Jr. was dismissed because his responses indicated that he would be unable to apply the law concerning the death penalty.
Assuming that Griffin made a prima facie showing of purposeful discrimination, this showing was adequately rebutted by the state's race-neutral reasons which are supported by the record. We conclude that not one of these seven peremptory challenges was used by the state to excuse a black prospective juror on the basis of race. The state articulated justifiable, racially neutral reasons for its decision to excuse each of these veniremen. The trial court properly ruled that there were no Batson violations in the state's exercise of its peremptory challenges.

ASSIGNMENTS OF ERROR 15 & 16
The trial court erred in allowing Gary Braggs to testify to immaterial and irrelevant matters.
A trial court's rulings as to relevancy, and balancing relevant evidence against the dangers of prejudice, will not be disturbed in the absence of a clear abuse of discretion that results in obvious prejudice to a defendant. State v. Caldwell, 504 So.2d 853 (La.1987); State v. Myers, 583 So.2d 67 (La.App.2d Cir.1991), writ denied, 585 So.2d 576 (La.1991). Even should we assume the trial court ruled erroneously, we must consider whether the error was prejudicial to Griffin. If we are convinced beyond a reasonable doubt that there is no reasonable possibility that the evidence may have contributed to the verdict, the error is deemed harmless and we do not reverse the conviction. State v. Robinson, 567 So.2d 719, 721 (La.App.2d Cir.1990).
Braggs testified that, after being shot, he ran through the woods to a nearby house seeking help. Clad only in tennis shoes, he pounded on the door of a home. In response, the occupants summoned the sheriff. When the sheriff arrived, Braggs told him that Griffin had shot him and taken his truck. Griffin argues that this testimony, if not irrelevant, should have been excluded because it unnecessarily excited the emotions of the jury and caused her undue prejudice. State v. Myers, supra. We disagree.
This testimony was relevant to show how the investigation came to focus on Griffin as a suspect. Braggs' testimony also tended to corroborate portions of the her confession in which she explained taking `Braggs' truck and clothes, wrecking the truck and leaving both it and the clothes near the crime scene. This argument is without merit.
The state asked Braggs how cocaine affected him. He testified that his mental abilities were affected; that it had him "high and that's about it ...". Griffin argues that the trial court erred in allowing Braggs to testify as to how cocaine affected him. By contrast, the state contends that this testimony was relevant on the issue of Griffin's specific intent.
This testimony is probative about whether cocaine can affect one person differently than another. However, its prejudicial value far outweighs its probative value because this issue tends to neither prove nor disprove the effect of cocaine upon Griffin's ability to form specific intent.
Even though Braggs' testimony about his cocaine experience should have been excluded, we do not find this error sufficient to warrant reversal of Griffin's conviction. The jury heard expert witness testimony on the effect of cocaine. The expert witnesses were allowed to give their opinions as to how the cocaine affected Griffin and the jury was able to weigh the testimony of all the witnesses accordingly. The jury also heard Griffin's description of *695 the offense, through her confession and her conversations with others. We find beyond a reasonable doubt that this testimony did not contribute to Griffin's conviction. Accordingly, this error is harmless.

ASSIGNMENTS OF ERROR 17 & 18
The defendant asserts that the trial court erred in allowing the introduction of State Exhibit 10, the taped confession, due to an improper foundation and chain of custody.
Griffin complains that Detective Dusty Gates testified that four other people had use of a key to the evidence locker where the taped was stored. None of the other people appeared to testify concerning their involvement or possibly tampering with the tape. In addition, the she argues that there was no evidence to show the chain of custody from the time the detective recorded the statement and the time it was transcribed.
To admit demonstrative or physical evidence at trial, it must be identified. The identification can be visual, that is, by testimony that the object exhibited is the one related to the case. It can also be identified by chain of custody. The general rule of authentication and identification is set forth in LSA-C.E. Art. 901(A). It provides that the requirement of authentication or identification is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." For the admission of demonstrative evidence, it suffices if the foundation laid established that it is more probable than not that the object is relevant to the case. State v. Anderson, 554 So.2d 133 (La.App. 2d Cir.1989). Once that foundation is established, the weight to be given the evidence is a question for the jury. State v. Landry, 388 So.2d 699 (La. 1980), cert. denied, 450 U.S. 968, 101 S.Ct. 1487, 67 L.Ed.2d 618 (1981).
Multiple access to an evidence locker is not the sort of break in a chain of custody that would preclude its admissibility. State v. Swafford, 588 So.2d 1276 (La. App.2d Cir.1991).
The state properly laid a foundation for admitting the tape into evidence. Detective Dusty Gates made a visual identification prior to its admission. He testified that his initials, as well as the defendant's, were placed on the tape at the time of its recording and identified those same initials on Exhibit # 10 at trial.
Although the tape was not in the Detective's physical custody for fourteen days while it was being transcribed, he testified that he had listened to the recording just prior to his testimony and that there had been no changes, additions or deletions made to the tape from the time it was recorded. This assignment of error is without merit.
The defendant also argues that the trial court erred in allowing a tape, which was not complete, to be played to the jury in violation of LSA-R.S. 15:450 which provides:
Every confession, admission or declaration sought to be used against anyone must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford.
The defendant argues that the jury was prejudiced in that the taped confession was inaudible or incomplete in parts.
The record reflects that, prior to the introduction of the tape, defense counsel was provided with a transcript of the recording prepared by the Louisiana State Police. In the transcript, it was indicated that certain portions were inaudible to the transcriber. Defense counsel objected to the use of an "incomplete statement." The state then offered to provide copies of the transcript to the jury to assist them in following along with the tape. Defense counsel objected, insisting that the tape itself be used exclusively as the best evidence. The tape was then played for the jury without objection as to whether it was audible. The transcription of the tape was never admitted into evidence.
No evidence was presented that the entire confession was not used in accordance *696 with LSA-R.S. 15:450. Only the transcript of the tape, which was not admitted into evidence, may have been incomplete. The tape was the best evidence of the statement and this is what was offered and admitted into evidence. This assignment of error is without merit.

ASSIGNMENTS OF ERROR 19 & 21
The defendant submits the trial court erred in refusing to allow Dr. Ware to give examples in connection with his testimony to the jury. Dr. Ware testified at length as to how the use of cocaine affects the perceptions of the user. At one point, Dr. Ware began to recount how a surgery resident at LSU reacted to smoking crack cocaine while watching television. The state objected on the basis that the testimony was irrelevant.
The trial court did not err in sustaining the objection. The story was anecdotal and was not offered to establish the basis for Dr. Ware's opinion as to the effects of cocaine on Griffin.
Griffin further asserts that the trial court erred in allowing the state to question Dr. Ware, on re-cross, on his feelings about the death penalty. She argues that, in accordance with LSA-C.E. Art. 611, a witness may not be questioned on redirect beyond the scope of cross-examination.
The trial court has the right and power to exercise reasonable control over the presentation of testimony and other evidence, and has broad discretion in its use of this power. LSA-C.E. Art. 611 A; Comment (b), LSA-C.E. Art. 611. A witness may be cross-examined on any matter relevant to any issue in the case, including credibility. LSA-C.E. Art. 611 B. This article limits the scope of cross examination for civil cases but provides no such limitation for criminal cases. For this reason, we find no merit to this argument.
Moreover, on redirect examination, defense counsel questioned Dr. Ware as to his motives for testifying and elicited that he did not appear as a defense witness. On re-cross examination, the state attempted to impeach Dr. Ware by showing that the doctor may have had a personal bias affecting his testimony because of his belief that chemically dependent persons, who actively suffer from their disease at the time they commit an act and who have not had treatment and an opportunity to improve, should not be subjected to the death penalty. Accordingly, the testimony about which Griffin complains was not outside the scope of her redirect examination.
Having failed to show a violation of LSA-C.E. Art. 611, Griffin also fails to show an abuse of the broad discretion accorded to the trial court in controlling the flow of evidence. Under these circumstances, the trial court did not err in allowing the state to question Dr. Ware on his feelings about the death penalty.
ASSIGNMENT OF ERROR 20
The defendant asserts that the trial court erred in failing to grant a mistrial when the state characterized the actions of the defendant as that of an "assassin" during the questioning of defense expert Dr. Paul D. Ware, a forensic psychiatrist.
A mistrial may be ordered when prejudicial conduct inside the courtroom makes it impossible for a defendant to obtain a fair trial. LSA-C.Cr.P. Art. 775. However, mistrial is a drastic remedy and is warranted only when substantial prejudice will otherwise result to the defendant sufficient to deprive him of a fair trial. State v. Smith, 418 So.2d 515 (La.1982). Determining whether such prejudice has resulted is within the sound discretion of the trial court, and a denial of a motion for mistrial will not be disturbed on appeal absent an abuse of that discretion. State v. Smith, supra; State v. Matthews, 552 So.2d 590 (La.App. 2d Cir.1989), writ denied, 559 So.2d 137 (La.1990); State v. Bean, 582 So.2d 947 (La.App. 2d Cir.1991) writ denied, 586 So.2d 567 (La.1991).
In its cross-examination of Dr. Ware, the state used the term as follows:
Q. She has convinced you that she feared for her life from Craig Harris who she said, after her arrest, had stopped to help her.
A. Ishe did not convince me that she feared for her life.
Q. Or had fear.

*697 A. Had fear. She convinced me of that.
Q. Fear justifying her assassination of him on the spot.
A. I don't consider what happened an assassination.
No contemporaneous objection was made after this exchange. Later in the same cross-examination, the state used the term in the following manner:
Q. So she rationally got the gun, hit [sic] it, for whatever reason, rationally got out of the car on the pretext of going to the bathroom and lured him out, for whatever reason____
A. Called him out.
Q. Called him out____
A. You like that word "lure".
Q. Yeah, I do. I do. I like the word assassination, too, but we won't use that. Called him out of the truck, chose a rational plan making ability, even under this intoxicated state.
After more questioning, defense counsel objected and moved for a mistrial, arguing that the jury had been prejudiced against Griffin because the state had twice referred to her as an assassin. The trial court denied the motion and instructed the jury to disregard the use of the term.
We note that it is subject to argument whether the facts of this case may be accurately referred to as an assassination.[2] However, we are not convinced that the state's use of the term so infected the proceedings as to have deprived Griffin of a fair trial. Moreover, because of the overwhelming evidence of Griffin's guilt, we deem the admonition given by the trial court to the jury, pursuant to LSA-C.Cr.P. Art. 771, to have sufficiently mollified any prejudice. Accordingly, we conclude that under the circumstances of this case, even if error, the use of the term "assassination" was harmless error. This assignment has no merit.
ASSIGNMENTS OF ERROR 22, 23 & 24
In these assignments, Griffin argues the trial court erred in ruling that the state provided sufficient notice under LSA-C.Cr.P. Art. 768 of its intent to introduce an oral inculpatory statement made by her. She argues that Marcella Lewis was allowed to testify about events outside of both the content and time frame of notice given.
LSA-C.Cr.P. Art. 768 provides:
Unless the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.
We note that Griffin was granted discovery, accordingly, this article is, by its terms, inapplicable. Therefore, we shall address whether the state's notice of these statements was in compliance with LSA-C.Cr.P. art. 716, which is the applicable discovery article.
LSA-C.Cr.P. Art. 716 B provides that,
Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the existence, but not the contents, of any oral confession or statement of any nature, made by the defendant, which the district attorney intends to offer in evidence at the trial, with the information as to when, where and to whom such oral confession or statement was made.
Notice of the existence of a confession or an inculpatory statement is required to avoid unfair surprise and to allow the defendant adequate time for preparation of a defense. State v. Jackson, 450 So.2d 621 (La.1984); State v. Russell, 416 So.2d 1283 (La.1982), cert. denied, 459 U.S. 974, 103 S.Ct. 309, 74 L.Ed.2d 288 (1982); State v. Brown, 480 So.2d 948 (La.App.2d *698 Cir.1985); State v. Foster, 437 So.2d 309 (La.App.2d Cir.1983).
On April 20, 1992, prior to the commencement of the defendant's trial, the state furnished to the defendant written notice of its intent to use inculpatory statements made by the defendant to Marcella Lewis, on or about September 19, 1991, during the evening hours, at the Union Parish detention center. The notice stated that the tenor of these statements was that the
Defendant admitted to Marcella Lewis that she had committed the crimes of which she stands charged; admitted that she smoked crack cocaine; stated that she was hysterical; and indicated that she intended to "play crazy."
Griffin contends that Ms. Lewis testified to events outside the scope of the notice given. At trial, defense counsel objected to Lewis' testimony, and argued that the notice did not disclose any details of a plan or scheme for Griffin to "act crazy". However, the state is not required to disclose the content of the statements. LSA-C.Cr.P. Art. 716 B. For this reason, this argument has no merit.
Griffin's argument, that Marcella Lewis was allowed to testify as to events outside of the time frames set forth in the notice given, is also meritless. At the beginning of her testimony, when asked during what time period she and the defendant were housed together, Ms. Lewis responded, "It was, ah, September, during the first of September, '91". Defense counsel objected, asserting that the events were outside of the time frame stated, that the state attempted to rehabilitate the witness, and that the state was trying to impeach its own witness.
The trial court allowed the state to ask the following:
Q. Miss Lewis, when you say somewhere around the first part of September, 91, could you have been referring to on or about September 19th of 1991?
A. Exactly.
"Around the first of September" is sufficiently within the "on or about September 19" time frame stated in the notice given.
For these reasons, we find no merit to these assignments.
ASSIGNMENT OF ERROR 25
The defendant asserts the trial court erred in restricting the cross-examination of Marcella Lewis to testimony about convictions.
The state's direct examination of Lewis concluded with the following exchange:
Q. Miss Lewis, what, if any charges do you have pending against you right now?
A. Ah, come again? I didn't hearI didn't understand what you just said.
Q. Have any promises been made to you, Miss Lewis, for your testimony today?
A. No. That's not let's make a deal.
Q. Miss Lewis, is it your testimony here today been the truth? [sic]
A. As the Lord is my witness.
Q. Thank you, Miss Lewis.
The state tendered the witness and, on cross-examination, defense counsel asked what kind of criminal charges were pending against her. The witness answered, "I have robbed people. I robbed. I have stole. You name it on the bad end. I've never killed". When defense counsel asked about a specific docket number pending against the witness, the state objected arguing that only convictions could be used to impeach the witness. The trial court sustained the objection.
LSA-C.E. Art. 609.1 provides:
B. Convictions. Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.
As indicated by the Author's Notes (2), LSA-C.E. Art. 609.1, the "use of the word `generally' presumably acknowledges the possible use of arrests, indictments and the *699 like where independently relevant to show bias."
Several cases have recognized the right to interrogate a witness, upon issues other than his credibility, about matters beyond convictions. For example, the possibility that the prosecution may have leverage over a witness due to that witness' pending criminal charges is recognized as a valid area of cross-examination. State v. Brumfield, 546 So.2d 1241, 1246 (La.App. 1st Cir.1989) writ denied, 556 So.2d 54 (La. 1990); State v. Rankin, 465 So.2d 679, 681 (La.1985); State v. Mays, 612 So.2d 1040, 1046 (La.App. 2d Cir.1993).
As stated in State v. Smith, 591 So.2d 1219, 1225, (La.App. 4th Cir.1991), writ denied, 604 So.2d 995 (La.1992):
When the purpose is to show that the witness has bias or prejudice against a defendant or party to the litigation, the witness may be examined on the issue to establish bias, prejudice, corruption or interest. This includes evidence of the existence of any agreement or deal with the State whereby the witness receives any benefit or gain in exchange for the testimony given.
Thus, there are exceptions to the general rule found in Art. 609.1 B.
In the instant case, the state initiated this line of questioning by directly asking Lewis about her pending charges. When defense counsel asked Lewis about a specific docket number, the trial court erred in foreclosing this area of examination. Notwithstanding the trial court's error in sustaining the objection, Griffin was able to effectively impeach Lewis. Prior to the stated objection, Lewis readily admitted to pending charges, "[h]ow many I can't count `um'," and likened the courtroom to a "second home". She even admitted pleading guilty to an offense she said she didn't commit just to get out of jail. Moreover, in light of the compelling evidence presented, we find that the state had a strong case against Griffin even without Lewis' testimony. We conclude that any error arising from the trial court's refusal to allow testimony about pending charges is harmless beyond a reasonable doubt. The assignment of error is without merit.
ASSIGNMENTS OF ERROR 27 & 28
The defendant asserts the trial court erred in failing to grant her motion for post verdict judgment of acquittal and motion for new trial.
In support of the motion for new trial she cites LSA-C.Cr.P. Art. 851 and argues that the court's ruling on written motions and objections made during the proceedings, show prejudicial error and the verdict is contrary to the law and the evidence. The court's ruling on written motions and objections made during the proceedings are adequately supported by the record and have been reviewed in the prior assignments of error.
On the motion for new trial, the trial court may assess only the weight of the evidence. State v. Seay, 521 So.2d 1206 (La.App. 2d Cir.1988). A determination of the weight of the evidence is a question of fact over which this court has no appellate jurisdiction in criminal cases. State v. Miller, 561 So.2d 892 (La.App. 2d Cir.1990), writ denied, 566 So.2d 983 (La. 1990); LSA-Const.Art. 5 § 10(B). Ordinarily, there is no appeal from the trial court's refusal to grant a motion for new trial except for error of law. LSA-C.Cr.P. Art. 858; Seay, supra; State v. Bryant, 607 So.2d 11 (La.App. 2d Cir.1992); State v. Combs, 600 So.2d 751 (La.App. 2d Cir. 1992), writ denied, 604 So.2d 973 (La.1992); State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983); LSA-C.C.P. Art. 858. Finding no error of law regarding the motion for new trial, we therefore address only the denial of Griffin's motion for post-verdict judgment of acquittal.
In support of the motion for post verdict judgment of acquittal Griffin argues that the evidence was insufficient to prove she had the requisite specific intent to support the conviction. Alternatively, she argues that the evidence is sufficient only to support a verdict of not guilty by reason of insanity or guilty of manslaughter. LSA-C.Cr.P. Art. 821 provides that a motion for post verdict judgment of acquittal shall be granted only if the court finds that the *700 evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. This is a question of legal sufficiency. State v. Combs, supra.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Lott, 535 So.2d 963 (La. App. 2d Cir.1988).
This court's authority to review questions of fact in a criminal case is limited to the sufficiency of the evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. LSA-Const. Art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (1987).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Braswell, 605 So.2d 702 (La.App. 2d Cir.1992); State v. Emerick, 499 So.2d 195 (La.App. 2d Cir.1986).
In this assignment, the central issue is whether Griffin had the requisite specific intent to support the conviction of first degree murder. The existence of intent may be inferred from the circumstances of a transaction and the actions of the defendant.. LSA-R.S. 15:445; State v. Graham, 420 So.2d 1126 (La.1982); State v. Fuller, 414 So.2d 306 (La.1982); State v. Doby, 540 So.2d 1008 (La.App. 2d Cir.), writ denied, 544 So.2d 398 (1989). The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741 (La. 1982); State v. Butler, 322 So.2d 189 (La. 1975); State v. Dean, 528 So.2d 679 (La. App. 2d Cir.1988). In reviewing the correctness of such a determination, the Court should review the evidence in a light most favorable to the prosecution and must determine if the evidence is sufficient to convince a reasonable trier of fact of the guilt of the defendant beyond a reasonable doubt as to every element of the offense. Jackson v. Virginia, supra; State v. Huizar, supra.
The fact that Griffin fired the gun at Craig Harris and at Braggs multiple times indicates her culpable state of mind and satisfies the specific intent to kill requirement for the first degree murder of Harris. See State v. Vance, 544 So.2d 41, 45 (La.App. 2d Cir.1989), writ denied, 551 So.2d 1317 (La.1989).
Here, that determination was made by the jury after evaluating all of the evidence, including the testimony of Braggs, the defendant's own confession and the testimony of the psychiatrists sitting on the sanity commission. The evidence presented was ample to support the determination that Griffin, although admittedly under the influence of cocaine, was sufficiently aware of her actions and surroundings to form the requisite specific intent. Viewed in a light most favorable to the state, this evidence *701 is sufficient to support Griffin's conviction. Accordingly, this assignment has no merit.

CONCLUSION
For the reasons set forth above, we affirm Pamela Griffin's conviction.
AFFIRMED.

APPLICATION FOR REHEARING
Before MARVIN, HIGHTOWER, BROWN, STEWART and WILLIAMS, JJ.
Rehearing denied.
NOTES
[1] We note that the record shows that the state used ten of its twelve peremptory challenges. One was used to exclude a white prospective juror.
[2] Black's Law Dictionary contains the following definition of "assassination":

Murder committed, usually, though not necessarily, for hire, without direct provocation or cause of resentment given to the murderer by the person upon whom the crime is committed; though an assassination of a public figure might be done by one acting alone for personal, social or political reasons....