649 So.2d 1022 (1994)
STATE of Louisiana, Appellee,
v.
Albert I. MATTHEWS aka Iceburg, Appellant.
No. 26,550-KA.
Court of Appeal of Louisiana, Second Circuit.
December 21, 1994.
Publication Ordered January 19, 1995.
Rehearing Denied January 19, 1995.
*1025 John William Focke, II, Monroe, for appellant.
Richard Ieyoub, Atty. Gen., Jerry L. Jones, Dist. Atty., Marcus R. Clark, Asst. Dist. Atty., for appellee.
Before VICTORY and STEWART, JJ., and PRICE, J. Pro Tem.
VICTORY, Judge.
Defendant, Albert I. Matthews, "Iceburg," was convicted, as charged, of three counts of conspiracy to distribute cocaine and three counts of distribution of cocaine, in violation of LSA-R.S. 40:979 and 40:967. Adjudicated an habitual offender, defendant was sentenced to consecutive 15-, 30-, and 40-year sentences on the distribution charges, and concurrent 5-, 10-, and 15-year sentences on the conspiracy charges, to run consecutively with the distribution sentences. Defendant appeals his convictions and sentences urging 15 assignments of error. We affirm his convictions, but vacate his sentences and remand for resentencing.

FACTS
On July 8, 1992, a cooperating individual, Nathaniel "Nate" Carter, arranged to purchase one-half of an ounce of cocaine from the defendant. Undercover Officer, Eric Goins met Nate Carter at his residence that afternoon to participate in the purchase. When the defendant did not show up, Nate Carter questioned his niece, Sheila Carter, who was also the defendant's girlfriend and co-conspirator, about defendant's whereabouts. Sheila Carter responded that defendant was not coming but he had sent her with the cocaine. When Goins protested, Sheila Carter told Goins that the defendant *1026 did not want to meet him because defendant had just been released from prison, and was concerned that Goins was a police officer. Goins purchased one-half of an ounce of cocaine for $700 from Sheila Carter.
On July 15, 1992, Nate Carter arranged a second purchase of one-half of an ounce of cocaine from the defendant for $700. Goins and Nate Carter went to the defendant's residence. While Goins stayed in the car, Nate Carter went into the home and purchased the cocaine from the defendant. Nate Carter attempted to convince the defendant to sell the cocaine directly to Goins, but defendant refused, stating that if Goins wanted to purchase cocaine from him, he would have to deal through Nate Carter or Sheila Carter. Sheila Carter was present and helped to count the money.
On August 3, 1992, Nate Carter arranged a third purchase of one-half of an ounce of cocaine from the defendant for $700. Nate Carter and Goins went to the defendant's residence where Nate Carter again purchased the cocaine while Goins waited in the car. Marked money was used in the purchase. Sheila Carter was present at the time of the purchase. Each of the drug purchase transactions were tape recorded.
Shortly after the August 3, 1992, purchase, a search warrant and an arrest warrant were executed at the defendant's residence. During the search, the marked money was found in the defendant's bathrobe, along with approximately $6,000 in cash.
After being advised of his rights, the defendant admitted to selling cocaine to Nate Carter earlier that day. He also admitted that the cash found constituted proceeds from other drug sales.

ASSIGNMENTS OF ERROR # 1 & # 2
In these assignments of error, defendant alleges that the trial court erred in denying his motion for a new trial, claiming that: (1) the tape recordings of the transactions played at trial were not the same tape recordings that were made available to the defendant during pre-trial discovery; and (2) the law and evidence do not support a finding of three separate conspiracies to distribute cocaine. Following an evidentiary hearing, wherein the custodian of the records for the Monroe Metro Narcotics unit and defendant's co-conspirator both testified that the tapes played at trial were unaltered, the trial court denied the motion for new trial.
The decision on a motion for new trial rests within the sound discretion of the trial judge, and his ruling will not be disturbed on appeal absent a clear showing of abuse. State v. Quimby, 419 So.2d 951 (La. 1982); State v. McLemore, 26,106 (La.App. 2d Cir. 06/24/94), 640 So.2d 847. The merits of such a motion must be viewed with extreme caution in the interest of preserving the finality of judgments. As a general rule, a motion for new trial will be denied unless injustice has been done. LSA-C.Cr.P. Art. 851; State v. McLemore, supra; State v. Dickerson, 579 So.2d 472 (La.App. 3d Cir. 1991), modified on other grounds and affirmed, 584 So.2d 1140 (La.1991). In a motion for a new trial based upon newly discovered evidence, the mover must show that new and material evidence is available and, notwithstanding the exercise of reasonable diligence, was not discovered before or during trial. LSA-C.Cr.P. Art. 851(3); State v. Quebedeaux, 424 So.2d 1009 (La.1982), remanded on other grounds.
The three instances of distribution for which the defendant was convicted were recorded by Carter. Prior to trial, the defendant had three opportunities to review the tapes and, in fact, made copies of the recordings. At trial, the defendant made no objection when the state played the tapes for the jury and introduced them into evidence. Defendant explains his failure to object by arguing that he was unaware of the alleged alterations of the original tape recordings until they were played at trial. Defendant's complaint was discoverable during trial and does not provide sufficient grounds for granting a new trial. LSA-C.Cr.P. Art. 851(3)[1].
*1027 Next, defendant contends that the law and evidence do not support a finding of three separate conspiracies to distribute cocaine. He asserts that if there was a conspiracy to distribute cocaine between himself and Sheila Carter, it was one continuous conspiracy, not three separate conspiracies.
The existence of single or multiple conspiracies is a question-of-fact to be decided by the jury which must be upheld if the facts adequately sustain the conclusion. U.S. v. Ellender, 947 F.2d 748 (5th Cir.1991). In determining whether there exists single or multiple conspiracies, the following five factors should be considered: (1) the time frame; (2) the locations of the events charged as part of the conspiracy; (3) the parties involved in the conspiracy; (4) the extent to which the overt acts of the parties indicates whether the conspiracies have a common goal; and (5) the statutory offenses charged in the indictment. Ellender, supra.
In the instant case, each sale was distinct in time. There was no overlap between the sales as each was a separate transaction. Also, the transactions did not have a common location. The first sale took place at Nate Carter's house, whereas the second and third sales took place at the defendant's residence.
Additionally, neither the defendant nor his co-conspirator discussed future sales with Goins or Nate Carter. There was no evidence presented about credit sales, sales to other buyers, or an agreement to supply cocaine in the future; any of which would be evidence of a continuing conspiracy.
The state presented evidence sufficient for the jury to determine that there was a separate conspiracy for each transaction. Furthermore, the defendant did not argue this theory to the jury nor did he request any special jury charges on this subject. The trial court did not err in denying defendant's motion for a new trial. These assignments of error are without merit.

ASSIGNMENT OF ERROR # 3
Defendant contends in this assignment of error that the trial court erred in finding that defendant's statements made at the time of his arrest were freely and voluntarily given. Prior to the commencement of the trial, the state requested a hearing on the admissibility of statements made by the defendant to the officers at the time of his arrest. The defendant alleges that he did not make any statements at the time of his arrest, and if he did, they were not free and voluntary because he was led to believe that he would not be charged for the most recent distribution and conspiracy transaction. After holding the requested evidentiary hearing, the trial court ruled that the statements were freely and voluntarily given after the defendant had been advised of his rights.
Before a confession may be introduced in evidence, the state has the burden of proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, inducements, or promises. LSA-R.S. 15:451; LSA-C.Cr.P. Art. 703(D); State v. Leonard, 605 So.2d 697 (La. App. 2d Cir.1992). The state must also establish that an accused who makes a confession during custodial interrogation was first advised of his Miranda rights. State v. Kersey, 406 So.2d 555 (La.1981); State v. English, 582 So.2d 1358 (La.App. 2d Cir.1991), writ denied, 584 So.2d 1172 (La.1991).
A confession obtained by direct or implied promises, however slight, or by the exertion of any improper influence must be considered involuntary and inadmissible. State v. Morvant, 384 So.2d 765 (La.1980); Leonard, supra. However, a mild exhortation to tell the truth, or a remark that if the defendant cooperates the officer will "do what he can" or "things will go easier," does not negate the voluntary nature of the confession. English, supra. Further, informing a defendant that the district attorney will be advised of any cooperation is insufficient to overcome the free and voluntary nature of a confession. State v. Vernon, 385 So.2d 200 (La.1980); State v. Jackson, 523 So.2d 251 (La.App. 2d Cir.1988), writ denied, 530 So.2d 565 (La.1988).
Whether the state has made an adequate showing that the defendant's confession *1028 was free and voluntary depends on the facts of each case. The trial court's findings as to the free and voluntary nature of the confession are entitled to great deference and will not be disturbed unless unsupported by the evidence. Leonard, supra; English, supra.
At the evidentiary hearing, Detective Ron Schleuter testified that he and his partner, Detective Keyes, executed the search and arrest warrants on August 3, 1992, at the defendant's residence. Schleuter stated that after taking the defendant into custody, he advised the defendant of the arrest and search warrants, and then advised him of his Miranda rights. Defendant indicated to Schleuter that he understood his rights, and made no statements to Schleuter.
Detective Paul Benjamin testified that he also participated in the execution of the search warrant at defendant's residence on August 3, 1992. He testified that he first encountered the defendant after Schleuter had taken him into custody. Schleuter informed Benjamin that he had advised the defendant of his Miranda, rights. The defendant told Benjamin that he understood his rights. The defendant then asked Benjamin if he could get some help on the charges he was facing. At this point, Benjamin informed the defendant that Detective Fried was on his way and would explain to the defendant the charges that he was facing. Benjamin testified that he made no promises or threats to the defendant.
Upon arriving on the scene, Detective James Fried advised defendant of his rights under Miranda, the nature of the search warrant, and the charges he was facing. Fried testified that the defendant told him he understood his rights, and he was willing to assist the officers in arresting other drug dealers, namely his connections. Fried told the defendant that they were interested in finding the money that Nate Carter had used to purchase cocaine from the defendant. Defendant initially denied selling any drugs to Nate Carter out of his residence. However, when Fried told the defendant that he knew that to be incorrect, the defendant stated he was "fronting" the drugs to Nate Carter. When Fried again told the defendant that he knew that to be incorrect, the defendant admitted to selling the cocaine to Nate Carter for $700. Benjamin was also present when defendant made these statements to Fried, and corroborated Fried's testimony.
Fried further testified that after he confessed to selling the cocaine to Nate Carter, the defendant offered to help the officers arrest other drug dealers in exchange for help on his current charges. Fried told the defendant that he would not charge him with the offenses that occurred on August 3, 1992, but that he would refer the matter to the district attorney's office. Fried made it clear to the defendant that the district attorney probably would charge him with the August 3 offenses at a later date. Fried testified that he made no promises or threats to the defendant.
The defendant offered no testimony or evidence at the suppression hearing. At trial, defendant admitted that the officers advised him of his rights, but he denied making any statements to the officers.
Considering the consistent testimony of the three detectives, the trial court did not err in finding that the defendant's statements were freely and voluntarily given after defendant had been advised of his constitutional rights. Defendant's allegations that he was induced to confess by the promise of Fried not charging him for the offenses occurring on August 3, 1992, is unsupported by the evidence. Fried told the defendant that he would not charge him with the offenses only after the defendant had confessed to selling cocaine to Nate Carter. Furthermore, Fried made it clear to the defendant that the district attorney had ultimate discretion to decide whether to charge him with all of the offenses at a later date. This assignment of error is without merit.

ASSIGNMENT OF ERROR # 4
Defendant contends in this assignment of error that the trial court erred in allowing the admission of certain evidence relating to prior crimes committed by the defendant. Prior to trial, the state notified the defendant that it intended to introduce evidence, in the form of statements made by co-conspirator, *1029 Sheila Carter, of the fact that defendant had just been released from prison. At the evidentiary hearing, the state said that this evidence was necessary to prove defendant's plan or motive, i.e., that the defendant intended to shield himself from potential undercover officers by having his co-conspirator deal with persons that he did not know personally. The trial court made a preliminary ruling to admit the evidence of Sheila Carter's statements, but conditioned this ruling on events that were to occur at trial.
In his opening statement to the jury, defense counsel detailed defendant's prior criminal record. The state offered the testimony of Nate Carter who heard Sheila Carter state during the July 8, 1992 transaction, that defendant had just gotten out of jail and did not want to meet the undercover officer. The state also introduced the tape recording of Sheila Carter's statement. The defendant did not object to Sheila Carter's live testimony or to the playing of the recording. An error in the trial proceeding cannot be availed of after verdict unless it was objected to at the time of occurrence. LSA-C.Cr.P. Art. 841(A). Because the defendant did not object to the admittance of the statement or the recording during trial, this claim of error is not properly before this court.

ASSIGNMENT OF ERROR # 5
Defendant asserts in this assignment of error that the trial court erred in admitting into evidence certain hearsay statements made by Sheila Carter to Nate Carter. The essence of these statements was that defendant had sent Sheila Carter to conduct the July 8, 1992 cocaine sale because the defendant had just been released from prison, and did not want to meet any new people.
Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. LSA-C.E. Art. 801(C). A statement is not hearsay if the statement is made by a declarant while participating in a conspiracy to commit a crime and in furtherance of the object of the conspiracy, provided that a prima facie case of conspiracy has been established. LSA-C.E. Art. 801(D)(3)(b). A prima facie case of conspiracy is presented when the state introduces evidence which, if unrebutted, would be sufficient to establish the facts of the conspiracy. State v. Nall, 439 So.2d 420 (La.1983). The statements of the declarant may be considered by the trial court in making the preliminary determination of whether there is prima facie evidence of a conspiracy. However, the statements by themselves will not establish a prima facie case of conspiracy. State v. Myers, 545 So.2d 981 (La.1989). The state must provide other evidence that is independently admissible to support the prima facie case of conspiracy.
The standard for determining the admissibility of statements made by co-conspirators is less than that required to convict a defendant of conspiracy to commit an offense. Such statements, if admissible, only constitute evidence which the jury may consider in reaching its conclusion as to whether a defendant did or did not unlawfully participate in a conspiracy to commit an offense beyond a reasonable doubt. Accordingly, a trial court's determination as to the admissibility of such evidence, i.e., whether the state has made a prima facie showing of a conspiracy as to make the co-conspirators' statements admissible or inadmissible under LSA-C.E. Art. 801(D)(3)(b), will not be overturned absent clear error. State v. Lobato, 603 So.2d 739 (La.1992), remanded on other grounds.
The trial court held an evidentiary hearing prior to trial to determine the admissibility of the statements made by Sheila Carter to Nate Carter and Detective Goins during the first transaction. The state called Nate Carter who testified that he had arranged the first purchase with the defendant, but that when the defendant failed to show up, the sale was conducted by Sheila Carter. Nate Carter testified that his niece, Sheila, was defendant's longtime girlfriend. The fact that she was at the place arranged by Nate Carter with defendant at the correct time with the correct amount of cocaine for sale at the correct price is strong evidence that defendant sent her to make the sale on his behalf. The state also called Detective *1030 Fried who testified that on August 3, 1992, the date of the defendant's arrest, Sheila Carter admitted that the defendant had sent her to distribute the cocaine to Detective Goins and Nate Carter on July 8, 1992. This confession was made in the presence of the defendant. Furthermore, Detective Fried testified that he heard Sheila Carter's statements to Nate Carter and Goins that were the subject of the hearing.
While the statements of Sheila Carter cannot by themselves be considered sufficient evidence, the state introduced other evidence in the form of Nate Carter's and Detective Fried's testimony to establish a prima facie case of conspiracy. Therefore, Sheila Carter's statements were not hearsay, and were admissible. This assignment of error is without merit.

ASSIGNMENT OF ERROR # 6
Defendant did not brief or argue this assignment. Assignments of error which are neither briefed nor argued are considered abandoned. URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989), writ denied, 558 So.2d 1123 (La.1990).

ASSIGNMENT OF ERROR # 7
The defendant assigns as error the trial court's denial of his Batson challenge. He argues that the prosecutor improperly used peremptory challenges to purposefully discriminate on the basis of race.
A peremptory challenge by the state shall not be based solely on the basis of the juror's race. LSA-C.Cr.P. Art. 795; Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In order to preserve the complaint that the prosecutor's use of a peremptory challenge was based on race, the defense must make an objection before the entire jury panel is sworn. State v. Williams, 524 So.2d 746 (La.1988); State v. Davis, 626 So.2d 800 (La.App. 2d Cir.1993), writ denied, 632 So.2d 762.
To establish a prima facie case of race-based discrimination in the state's use of peremptory exceptions, the defendant must show: (1) that he is a member of a cognizable group; and (2) facts and relevant circumstances which indicate that the state exercised peremptory challenges to exclude jurors on the basis of race. If the defendant makes the prima facie showing, the burden shifts to the state to come forward with racially neutral explanations for exercising the peremptory challenges. State v. Butler, 25,563 (La.App. 2d Cir. 01/19/94), 631 So.2d 22; State v. Griffin, 618 So.2d 680 (La.App. 2d Cir.1993), writ denied, 625 So.2d 1063 (La.1993).
The state's explanation need not rise to the level justifying exercise of a challenge for cause. Griffin, supra. Ultimately, the burden of persuasion is on the defendant. State v. Thompson, 516 So.2d 349 (La.1987), cert. denied, 488 U.S. 871, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988).
Before the entire jury was empaneled, the defendant, a black male, objected to the state's alleged systematic exclusion of all black males from the jury. Examination of the record indicates that the state exercised peremptory challenges against three black male prospective jurors. A fourth black male was excused for cause on a joint motion because he knew the defendant. The jury was ultimately composed of two black females, seven white females and three white males. The alternate juror was a black female.
The trial court did not rule on whether the defendant had established a prima facie showing under Batson. However, the court allowed the district attorney to set forth reasons for the three challenges to the black males, Mr. Randy Washington, Mr. Edwin Slack, and Mr. Keith Morgan. The prosecutor stated that he excused Mr. Washington because he knew the co-conspirator, Sheila Carter, and the cooperating witness, Nate Carter. Although Sheila Carter was not on trial, the conspiracy charges were based on her actions and cooperation with the defendant. Sheila Carter was expected to testify for a limited purpose. Nate Carter was expected to testify about Sheila Carter's involvement in the defendant's case. The prosecutor stated that he preferred to excuse Mr. Washington rather than question him as to who he would believe if the witnesses were *1031 to present conflicting testimony, since this questioning could have tainted the entire jury pool. The prosecutor's concerns about Mr. Washington's prior acquaintance with Sheila Carter provide a sufficiently race neutral basis for excluding him from the jury.
The prosecutor stated that he excused Mr. Slack because he had information that a person with the same name and birthday as Mr. Slack had been convicted of a burglary and theft. When questioned about this, Mr. Slack acknowledged that the date of birth was also his own, but denied having been convicted. The prosecutor indicated that he believed Mr. Slack was not answering truthfully when questioned about his past criminal activity. The fact that the prosecutor does not believe a juror's answers is a racially neutral reason to exclude a potential juror. State v. Tucker, 591 So.2d 1208 (La.App. 2d Cir.1991), writ denied, 594 So.2d 1317 (La. 1992).
The prosecutor stated that he had information that Mr. Morgan associated with people who were subject to Monroe Metro Narcotics investigations. The prosecutor further stated that Mr. Morgan seemed to enthusiastically agree with defense counsel on crucial elements. The prosecutor noted that Mr. Morgan seemed to be "pairing up" with the defendant's counsel. The fact that a potential juror may have established a rapport with the defense counsel is a racially neutral reason for exercising a peremptory challenge. State v. Leblanc, 618 So.2d 949 (La. App. 1st Cir.1993).
The state provided adequate racially neutral reasons for exercising its peremptory challenges. The trial court did not err in denying defendant's Batson motion. This assignment of error is without merit.

ASSIGNMENT OF ERROR # 8
In this assignment of error, the defendant alleges that the trial court erred in overruling his objections to the admission of hearsay testimony. During Detective Fried's testimony, the defendant objected to Detective Fried testifying as to what Nate Carter told him about the transactions. This evidence was not offered for the truth of the matter asserted, rather it was offered to show the motive for Detective Fried's next action. Therefore, this statement is not hearsay and is admissible. Later in the trial, Nate Carter testified with personal knowledge of the details of each transaction.
A short time later, defendant again objected to Detective Fried testifying as to what Nate Carter told him and requested the trial court instruct the jury that the statements were not being offered for their truth, but, they were being offered to show the motive for Detective Fried's actions. The trial court complied and gave the jury these instructions. There is no error in the trial court's actions nor is there a basis for defendant's assignment of error.
Defendant also objected to Detective Fried testifying as to what he heard over the transmitter radio during the transactions. After hearing arguments outside the presence of the jury, the court sustained the objection and prohibited Detective Fried from testifying as to what he heard until the tapes were played for the jury. Since the defendant received a favorable ruling, he has no cause to complain of the trial court's action.
Finally, the defendant objected to Detective Goins testifying as to what was heard on the tape. The trial court instructed the state to rephrase the question and the state complied. This assignment of error is without merit.

ASSIGNMENT OF ERROR # 9
The defendant asserts in this assignment of error that the trial court erred in allowing the state to use unsworn transcripts of the tape recordings during trial as demonstrative evidence. A transcript of a tape recording used for the jury's convenience does not violate the best evidence rule. State v. Burdgess, 434 So.2d 1062 (La.1983). This assignment of error is without merit.

ASSIGNMENT OF ERROR # 10
Defendant complains in this assignment of error that the trial court erred in failing to grant his request to allow Sheila Carter's assertion of her right not to incriminate herself on a question-by-question basis. Defendant, however, failed to make this request to the trial court. At trial, defendant called *1032 Sheila Carter as a witness. The jury was instructed that Sheila Carter was asserting her right to not give testimony that would incriminate her, but would testify on a limited subject matter. Defendant made no objection to Sheila Carter testifying on a limited basis. An error cannot be availed of after verdict unless it was objected to at the time of occurrence. LSA-C.Cr.P. Art. 841. This assignment of error is without merit.

ASSIGNMENT OF ERROR # 11
Defendant asserts that the trial court erred in failing to give certain jury instructions he requested. Defendant first complains that the trial court erred in providing an explanation of reasonable doubt in its charge to the jury, and objects specifically to the use of the term "firmly" in the instruction. The contested portion of the charge was given as follows:
Reasonable doubt is doubt based on reason and common sense and is present when, after you have carefully considered all the evidence, you cannot say that you are firmly convinced of the truth of the charge.
A jury charge must be considered as a whole, and particular expressions in a charge must be construed in context with the entire charge. A conviction will not be reversed on the ground of an erroneous jury charge unless the disputed portion, when considered in connection with the remainder of the charge, is erroneous and prejudicial. State v. Motton, 395 So.2d 1337 (La.1981), cert. denied sub nom. Motton v. Louisiana, 454 U.S. 850, 102 S.Ct. 289, 70 L.Ed.2d 139 (1981). The trial court is permitted, but is not required, to define the term "reasonable doubt." LSA-C.Cr.P. Art. 804(A)(3).
We find that the use of the term "firmly" in the court's instruction does not suggest a lower degree of proof than is required to convict under the reasonable doubt standard. The contested instruction, when construed in the context of the entire charge, was not erroneous or prejudicial. In fact, it is the reasonable doubt instruction recommended by the Louisiana Judges Criminal Bench Book, Vol. 1, Sec. 3.03 (1993).
Defendant next complains that the trial court erred in failing to give several requested jury instructions. In pertinent part, LSA-C.Cr.P. Art. 807 provides:
A requested special charge shall be given by the trial court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
A review of the record reveals that each requested charge required qualification, limitation, or explanation, or was not wholly correct and pertinent, or was already included in the charges to the jury. We find no error in the trial court's refusal to give these instructions. This assignment of error is without merit.

ASSIGNMENTS OF ERROR # 12, # 13, & # 14
The trial court held an habitual offender hearing and found defendant to be a second habitual offender on the three distribution charges. For the distribution charges, the trial court imposed consecutive sentences of 15 years at hard labor on count two, 30 years at hard labor on count four and 40 years at hard labor on count six. On the conspiracy charges, the trial court imposed concurrent sentences of 5 years at hard labor for count one, 10 years at hard labor for count three and 15 years at hard labor on count five, to run consecutively with the distribution sentences.
The defendant filed in the trial court a motion to reconsider the imposed sentences. Therein, he alleged that: (1) the sentences are excessive; (2) the trial court erred in deviating from the sentencing guidelines; and (3) the trial court erred in finding the existence of aggravating circumstances. Defendant's motion to reconsider was denied by the trial court and he appeals on the same grounds.
The Louisiana Sentencing Guidelines are advisory. Although a sentencing court must properly consider the guidelines, it has the discretion to reject them and impose any sentence which is not constitutionally excessive, but is within the statutory sentencing range for the crime of which a defendant has been convicted, so long as he states for the *1033 record the considerations taken into account and the factual basis for imposition of that sentence. State v. Smith, 93-0402 (La. 7/5/94), 639 So.2d 237.
In accordance with Smith, supra, the trial court noted that it was "varying" from the guidelines, giving several reasons and the factual bases for the defendant's sentences: (1) two prior felony drug convictions; (2) that defendant was the leader of the conspiracies with his girlfriend; (3) defendant's parole status at the time of these six offenses; and (4) that defendant derived substantial income from drug activities.
Nevertheless, we must review the sentences imposed for constitutional excessiveness. Whether the sentences imposed are unconstitutionally excessive depends on the circumstances of the case and the background of the defendant. A sentence violates LSA-Const. Art. 1, § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Richardson, 545 So.2d 714 (La.App. 2d Cir.1989). A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, we do not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Thompson, 25,583 (La. App. 2d Cir. 1/19/94), 631 So.2d 555; State v. Madison, 535 So.2d 1024 (La.App. 2d Cir. 1988).
In our view, the sentences imposed, which total 100 years (consecutive 15-, 30-, 40-year sentences for distribution and a 15-year sentence on count five for conspiracy) of incarceration are excessive under the Louisiana Constitution. We have been unable to find any case in which 100 years has been affirmed under similar circumstances. In our view, the maximum sentences that could be imposed for this defendant for these offenses could not total more than 60 years, or 20 years for each distribution conviction. See State v. Williams, 599 So.2d 465 (La. App. 2d Cir.1992); State v. Lewis, 567 So.2d 726 (La.App. 2d Cir.1990), writ denied, 575 So.2d 364 (La.1991). Further, the conspiracy sentences imposed for Counts 1, 3, and 5 must run concurrently with the distribution sentences of Counts 2, 4, and 6, respectively, since each conspiracy was part of a common scheme or plan involving the distribution of cocaine on the same date. LSA-C.Cr.P. Art. 883.

ASSIGNMENT OF ERROR # 15
In this assignment of error, defendant asserts that the cumulative effect of the above errors denied him his basic right to due process of law. Since only the sentencing assignments have merit, there was no denial of due process.

DECREE
For the foregoing reasons, the defendant's convictions are affirmed, but the sentences imposed are vacated. This case is remanded to the trial court for resentencing consistent with this opinion.
CONVICTIONS AFFIRMED; SENTENCES VACATED; REMANDED FOR RESENTENCING.
STEWART, J., concurs in part and dissents in part with reasons.
STEWART, Judge, dissenting.
I concur in the majority's affirmation of the defendant's convictions. However, I respectfully dissent from the decision to vacate the sentences and to remand for resentencing because I do not find defendant's sentence excessive.
The defendant was convicted of three counts each of conspiracy to and distribution of cocaine. The trial court held a habitual offender hearing and found the defendant to be a second habitual offender on the three distribution charges. As such, the sentence on each count ranges from a minimum of 15 years at hard labor to a maximum of 60 years at hard labor. Because the offenses are not based on the same act or transaction, the sentences shall run consecutively unless *1034 the trial court directs otherwise. LSA-C.Cr.P. Art. 883. Consequently, on the distribution charges alone, defendant faced a possible maximum sentence of 180 years at hard labor.
Whether the sentences imposed are unconstitutionally excessive depends on the circumstances of the case and the background of the defendant. A sentence violates LSA-Const. Art. 1, Sec. 20 (1974) if it is grossly disproportionate to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Richardson, 545 So.2d 714 (La.App. 2d Cir. 1989). A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, we do not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Thompson, 25, 583 (La.App. 2d Cir. 1/19/94), 631 So.2d 555; State v. Madison, 535 So.2d 1024 (La.App. 2d Cir.1988).
At the sentencing hearing, the trial court noted that the offenses involved a substantial amount of cocaine, $700 worth on each of three occasions. The trial court also noted defendant's history of criminal activity. The defendant has two prior felony convictions, each involving drug activity, in addition to other previous crimes. The trial court considered the fact that the present offenses occurred just three months after the defendant had been paroled. The defendant was considered a major drug dealer in the community.
The trial court did not abuse its discretion in sentencing defendant to a total of 85 years at hard labor on the distribution of cocaine charges, which is less than one half the possible 180 years to which defendant was subjected. Based on the trial court's factual findings, this sentence is neither excessive nor grossly disproportionate to the nature of the crimes.
In State v. Lewis, 567 So.2d 726 (La.App. 2d Cir.1990), writ denied 575 So.2d 364 (La. 1991), cited by the majority, this court affirmed a defendant's receipt of 40 out of a potential 60 years at hard labor for two counts of distribution of significantly smaller amounts of cocaine than is at issue here. The 40-year sentence was more than half of the potential sentence facing that defendant.
In State v. Swafford, 588 So.2d 1276 (La. App. 2d Cir.1991), this court affirmed a sentence of 35 years at hard labor for a habitual offender convicted of possession of marijuana with intent to distribute. The defendant faced a potential 60 years at hard labor and received more than half of that.[1]
Based on the jurisprudence originating in this court, a sentence of less than one half the maximum does not shock our sense of justice. In fact, with criminal drug activity running rampant and wreaking havoc on society, any lesser sentence depreciates the seriousness of the actions of a habitual major drug dealer.
I would affirm the sentences on the distribution of cocaine convictions and affirm their running consecutive to each other, but would order that they run concurrently with the conspiracy charges.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, LINDSAY and STEWART, JJ., and PRICE, J., Pro Tem.
Rehearing denied.
NOTES
[1] At the evidentiary hearing, defendant's co-conspirator testified that the tapes introduced at trial were the same tapes that she had heard before trial during pre-trial discovery. Detective Larry Norris, custodian of the records for the Metro Narcotics, testified that he played the recordings for the defendant before trial and that the same recordings were used at trial. He also testified that the recordings were not altered before trial.
[1] The writer of the majority opinion concurred in Swafford, supra.