GASKINS, J.
liThe defendant, Darrius R. Williams, was convicted of second degree murder for killing a 17-month-old child with an assault rifle. He was sentenced to life imprisonment without the benefit of parole, probation or suspension of sentence. He appeals, asserting two assignments of error. We affirm the defendant’s conviction and sentence.
FACTS
Shortly before 4:00 a.m. on August 30, 2008, the 17-year-old defendant and an accomplice were involved in a shooting at a house on Lillian Street in Shreveport. They were looking for a man with whom a friend of theirs was having a dispute over a girl. The defendant fired at least 15 shots from an SKS assault rifle into the house. The accomplice fired an AK-47 assault rifle until it jammed after firing approximately four shots. A 17-month-old baby inside the house was shot and killed in his playpen. The baby’s parents and three siblings were uninjured. An adult guest in the house suffered three gunshot wounds. The man whom the defendant was trying to kill — the baby’s uncle — did not live at the house and was not present at the time of the murder.
During the investigation, the defendant was identified as a suspect. The police interviewed the defendant. On August 30 and 31, 2008, the defendant made three recorded statements to the police. During these interviews, the defendant implicated himself in the murder of the child.
The defendant was indicted for first degree murder. Prior to trial, the charge was amended to second degree murder.
|2In September 2009, the defendant filed a motion to suppress his statements to the police. In October 2009, he filed a supplemental motion to suppress. A hearing was held on the motion in December 2009. In February 2010, the trial court issued a written opinion in which it denied the motion to suppress.
In May 2011, the matter was tried before a jury. The defendant was convicted of second degree murder by a verdict of 11 to 1. The defendant’s motion for post-verdict judgment of modification was denied. The trial court imposed the mandatory sentence of life imprisonment without the benefit of parole, probation or suspension of sentence.
The defendant appealed, arguing two assignments of error.
MOTION TO SUPPRESS
The defendant contends the trial court erred in not suppressing his statements to the police. The defendant filed a motion to suppress generally alleging that the statements were improperly taken. In a subsequently filed amended motion to suppress, he asserted that there were “either or both explicit and/or implicit promises and/or inducements to make one or more inculpatory statements in exchange for a reduction of the charge to Manslaughter.” Furthermore, he stated that one of the detectives presented scenarios to the defendant under which he might receive *833 more lenient treatment depending upon his criminal history and/or cooperation with the police. According to the defendant, this “buttressed defendant’s impression that he was receiving a promise and/or inducement to give a statement in the form of a Manslaughter charge.”

laLaw

At a hearing on a motion to suppress a confession, the state bears the burden of proving the free and voluntary nature of the confession beyond a reasonable doubt. State v. Hills, 354 So.2d 186 (La.1977); State v. Roddy, 33,112 (La.App.2d Cir.4/7/00), 756 So.2d 1272, writ denied, 2000-1427 (La.5/11/01), 791 So.2d 1288.
Great weight is placed upon the trial court’s ruling on a motion to suppress in regard to the finding of facts because it had the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Crews, 28,153 (La.App.2d Cir.5/8/96), 674 So.2d 1082. Accordingly, on appeal, the trial court’s ruling on a motion to suppress is reviewed under the manifest error standard with regard to factual determinations, while its findings of law are subject to de novo review. State ex rel. Thibodeaux v. State, 2001-2510 (La.3/8/02), 811 So.2d 875; State v. Hemphill, 41,526 (La.App.2d Cir.11/17/06), 942 So.2d 1263, writ denied, 2006-2976 (La.3/9/07), 949 So.2d 441.
Before a confession can be introduced into evidence, the state must show that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. See La. R.S. 15:451; La. C. Cr. P. art. 703(D); State v. Bowers, 39,970 (La.App.2d Cir.8/19/05), 909 So.2d 1038; State v. Roddy, supra. When deciding whether a statement is knowing and voluntary, a court considers the totality of circumstances under which it is made, and any inducement is merely one factor in the analysis. State v. Holmes, 2006-2988 (La.12/2/08), 5 So.3d 42, cert. denied, — U.S. —, 130 S.Ct. 70, 175 L.Ed.2d 233 (2009). Voluntariness is assessed on a case by case basis under a totality of the circumstances standard. State v. Sparks, 1988-0017 (La.5/11/11), 68 So.3d 435, cert. denied, — U.S. —, 132 S.Ct. 1794, 182 L.Ed.2d 621 (2012).
The state must also establish that an accused who makes a statement during a custodial interrogation was first advised of his Miranda rights. State v. Bowers, supra; State v. Franklin, 35,268 (La.App.2d Cir.12/19/01), 803 So.2d 1057, writ denied, 2002-0352 (La.2/7/03), 836 So.2d 85; State v. Horn, 45,706 (La.App.2d Cir.11/3/10), 55 So.3d 100, writ denied, 2010-2721 (La.5/6/11), 62 So.3d 124.
Testimony of the interviewing police officer alone may be sufficient to prove that the statement was given freely and voluntarily. State v. Bowers, supra.
The jurisprudence has repeatedly concluded that a remark by the police telling the defendant that the officer will “do what he can” or “things will go easier” will not negate the voluntary nature of the confession. State v. Roddy, supra; State v. English, 582 So.2d 1358 (La.App.2d Cir.1991), writ denied, 584 So.2d 1172 (La.1991). In State v. Matthews, 26,550 (La.App.2d Cir.12/21/94), 649 So.2d 1022, writ denied, 95-0435 (La.6/16/95), 655 So.2d 341, this court stated:
A confession obtained by direct or implied promises, however slight, or by the exertion of any improper influence must be considered involuntary and inadmissible. However, a mild exhortation to tell the truth, or a remark that if the defendant cooperates the officer will “do what he can” or “things will go easier,” does *834 not negate the voluntary nature of the confession. Further, informing a defendant that the district attorney will be | ¿advised of any cooperation is insufficient to overcome the free and voluntary nature of a confession. [Citations omitted.]
See also State v. Thomas, 30,490 (La.App.2d Cir.4/8/98), 711 So.2d 808, writ denied, 99-0331 (La.7/2/99), 747 So.2d 8; State v. Taylor, 30,310 (La.App.2d Cir.2/25/98), 709 So.2d 883.
In State v. Lavalais, 95-0320 (La.11/25/96), 685 So.2d 1048, cert. denied, 522 U.S. 825, 118 S.Ct. 85, 139 L.Ed.2d 42 (1997), the defendant claimed that the interviewing officer induced him to confess by advising him that by telling the truth or confessing, Lavalais would be dealt "with differently and that if he went to jail, it would not be for as long a term of imprisonment. Lavalais asserted that the officer told him that if he were truthful, he would be dealt with differently from defendants who lied and that if he confessed, he might go to jail but probably not for life. Also, the defendant said the officer promised to talk to the judge and do what he could to help. The state supreme court held that “although some of [the officer’s] remarks are problematic, when the comments are taken in their entirety, they are not improper.” The comments were intended to imply that Lavalais “would have an easier time if he confessed” and were not promises or inducements designed to extract a confession.
In State v. Leonard, 605 So.2d 697 (La.App. 2 Cir.1992), this court found that the interrogating officer’s statements constituted an impermissible inducement that rendered the defendant’s confession involuntary and thus inadmissible. Furthermore, this court found that the error was not harmless error, as the inadmissible confession might have contributed to the verdict. The officer said that he would talk to the district | ^attorney about reducing the charge and discussed the differences in sentencing between the two charges. These statements were found to have induced Leonard into making a statement. Aside from the eyewitness testimony by the victim, the confession was the only evidence indicating that Leonard committed the crime. Also, the state relied heavily upon the confession in its case and closing arguments. Without the confession, the state’s case was much weaker, and this court concluded that the confession might have contributed to the jury’s guilty verdict.
In State v. Matthews, supra, this court found that the officer did not make an impermissible inducement because his promise to not charge the defendant for prior offenses was not made until after he had already confessed to the current offense and because the officer clearly advised that the district attorney had the ultimate discretion to decide whether to charge all of the offenses.
The erroneous admission of a confession is a trial error subject to harmless error analysis. Arizona v. Fulminante, 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991); State v. Tart, 93-0772 (La.2/9/96), 672 So.2d 116, cert. denied, 519 U.S. 934, 117 S.Ct. 310, 136 L.Ed.2d 227 (1996). An error is harmless beyond a reasonable doubt if it is unimportant in relation to the whole and the verdict rendered was surely unattributable to the error. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); State v. Montejo, 2006-1807 (La.5/11/10), 40 So.3d 952, cert. denied, — U.S. —, 131 S.Ct. 656, 178 L.Ed.2d 513 (2010).
| discussion
The state demonstrated that the defendant was properly advised of his Mi *835 randa rights and waived them. The interviewing officers ascertained the defendant’s age (17 years old) and his level of education (ninth grade). He told them that he was not under the influence of alcohol or narcotics but that he took a medication called Ability, which calmed him down; however, he said that he understood what was going on. Thereafter, he made three statements to the officers which were recorded.[1]
The officers’ comments to the defendant indicated that while the evidence developed at that point in their investigation was enough that he could be charged with offenses carrying the harshest mandatory punishments, they would consider any information the defendant had that might suggest a lesser charge was warranted. The officers specifically and repeatedly told the defendant that they wanted him to tell the truth. The officers clearly advised the defendant several times that the final charge would be determined by the district attorney and grand jury. The officers’ comments could be construed as encouragement to the defendant to help himself by cooperating and taking responsibility for his actions. The officers offered that if the shooting was really an accident, they could talk to the district attorney and the judge about it being an accident. However, they never promised that the defendant would get any specific benefit if he said the shooting was an accident or if they spoke to the district attorney and |¿¡udge. Additionally, the officers never promised that he would get a reduced sentence for cooperating and never promised that if he cooperated, he would benefit from whatever charge was written on the charge sheet. Encouragement to cooperate and suggestions that cooperation might make things easier for a defendant do not constitute impermissible inducements.
The officers told the defendant they had spoken with many other witnesses who said that the defendant had an assault rifle and that he was the shooter in the instant killing. With these statements — plus the large number of bullet holes in the house and other evidence — there was enough evidence to indicate that the defendant had the specific intent to kill someone and in shooting up the house, he was responsible for the child’s death. Accordingly, they told the defendant that he might face charges of first or second degree murder and the corresponding penalties. Advising a defendant of the statutory penalties for possible charges does not constitute an impermissible inducement.
The state established that the defendant was properly advised of his rights and waived them, and that the free and voluntary nature of those statements was not negated by any impermissible inducements. Therefore, the trial court did not abuse its discretion in denying the defendant’s motion to suppress his statements and admitting them as evidence.
Furthermore, even if the defendant’s statements were improperly admitted, their admission was harmless error beyond a reasonable doubt. Shortly before the shooting, the defendant declared in front of witnesses his desire to “kill somebody.” Witnesses placed him at the scene of the murdeij — a9 location where he believed his intended victim lived — armed with an SKS assault rifle. The evidence showed that there was at least one visible light on in the house, indicating that its *836 inhabitants might be at home. Witnesses who heard the shots saw the defendant running away from the direction of the house with the assault rifle immediately after the shots were fired. After the offense, the defendant made three separate admissions to the crime to witnesses, giving specific details about the shooting. He went so far as to openly brag about his mistaken belief that he “got” the man he intended to kill. Given such overwhelming evidence, we conclude that the defendant’s conviction was surely unattributable to any error in admitting the defendant’s statements to the police.
This assignment of error lacks merit.
NONUNANIMOUS JURY VERDICT
The defendant argues that the application of La. C. Cr. P. art. 782, which allows a nonunanimous jury verdict in hard labor cases, is unconstitutional and violates his Sixth Amendment right to a fair trial. Specifically, he contends that the jury should not have been instructed that a unanimous verdict was unnecessary. In support of that argument, the defendant asserts that Louisiana and Oregon are the only states which have provisions which allow for nonunanimous guilty verdicts.
La. C. Cr. P. art. 782 provides for the number of jurors composing a jury, and the number which must concur in rendering the verdict. In pertinent part, it states:
|inA. Cases in which punishment may be capital shall be tried by a jury of twelve jurors, all of whom must concur to render a verdict. Cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict.
Second degree murder is an offense for which “punishment is necessarily confinement at hard labor.” See La. R.S. 14:30.1.
The Louisiana Supreme Court has consistently upheld the constitutionality of La. C. Cr. P. art. 782(A). State v. Bertrand, 2008-2215 (La.3/17/09), 6 So.3d 738; State v. Edwards, 420 So.2d 663 (La.1982); State v. Simmons, 414 So.2d 705 (La.1982); State v. Jones, 381 So.2d 416 (La.1980). Additionally, as explained in State v. Bertrand, supra, the decisions of the United States Supreme Court have indicated that the constitutionality of nonunanimous jury verdicts is well settled.
Claims such as that made by this defendant have been repeatedly rejected by this court. State v. Jones, 46,758 (La.App.2d Cir.12/14/11), 81 So.3d 236; State v. Barnett, 46,303 (La.App.2d Cir.5/18/11), 70 So.3d 1, writ denied, 2011-1612 (La.4/13/12), 85 So.3d 1239; State v. Johnson, 45,828 (La.App.2d Cir.1/26/11), 57 So.3d 1087, writ denied, 2011-0433 (La.12/16/11), 76 So.3d 1198; State v. Winslow, 45,414 (La.App.2d Cir.12/15/10), 55 So.3d 910, writ denied, 2011-0192 (La.6/17/11), 63 So.3d 1033; State v. Blow, 45,415 (La.App.2d Cir.8/11/10), 46 So.3d 735, writ denied 2010-2093 (La.2/11/11), 56 So.3d 1000; State v. Malone, 43,548 (La.App.2d Cir.11/19/08), 998 So.2d 322, writ denied 2009-0198 (La.10/30/09), 21 So.3d 275; State v. Divers, 38,524 (La.App.2d Cir.11/23/04), 889 So.2d 335, writ denied, 2004-3186 (La.4/8/05), 899 So.2d 2, cert. denied 546 U.S. 939, 126 S.Ct. 431, 163 L.Ed.2d 327 (2005).
This assignment of error has no merit.
CONCLUSION
The defendant’s conviction and sentence are affirmed.
AFFIRMED.

. Interviews No. 1 and No. 2 were actually one long interview with a short break that occurred when the lead detective stopped the recorder to complete the charge sheet. When the defendant and the other detective ra-sumed talking, the lead detective turned the recorder back on. The defendant signed waiver forms at the beginning of Interviews No. 1 and No. 3.