’ DREW, J.
I iDarrius Williams was found guilty of second degree murder and sentenced to life imprisonment without benefits. We affirmed his conviction and sentence.[1]
The Louisiana Supreme Court remanded the matter to the trial court for resen-tencing in compliance with Miller v. Alabama, 667 U.S., -, 132 S.Ct. 2466, 183 L.Ed.2d 407 (2012), and La. C. Cr. P. art. 878.1. After á new sentencing hearing, the trial court concluded that a life sen *1071 tence without benefit of parole was appropriate, and sentenced the defendant accordingly. We again affirm.
FACTS .
In a dispute over a female, 17-year-old Darrius Williams and two friends ’ each armed themselves with an assault rifle and1 confronted a man in Bossier City. When police arrived, the defendant suggested that they go to Shreveport. '
Hours later, at 4:00 a.m. on August 30, 2008, the defendant fired 15 rounds into a house. One accomplice fired four rounds from an AK-47. The third person did not fire his weapon. The defendant bragged about the event, unaware that the intended victim was not'even, home at the time of the shooting. In the home at the time of the shooting, however, were the brother and sister-in-law of the intended victim, as well as their four children and a guest. All were asleep when the barrage began. The guest suffered three nonfatal gunshot wounds. LeGary Adams, an 18-month-old male, was shot | aand killed in his playpen. The others survived.
While defendant’s ease was pending on direct review, the decision in Miller v. Alabama, supra, was rendered by the United States Supreme Court. Therein, the court-held that the Eighth Amendment prohibits a mandatory sentencing scheme of life without parole eligibility for youthful offenders convicted of a homicide committed as’a juvenile. The court held that such a mandatory sentencing scheme, when applied to a juvenile, could result in a dispro-portionáte sentence in violation of the Eighth Amendment’s prohibition against cruel and unusual punishment.
Miller requires the sentencing court to hold a hearing to consider testimony and other evidence regarding the juvenile offender’s youth and related circumstances, which might militate against a sentence of life without parole. While Miller does not prohibit a sentence of life without eligibility for parole for a juvenile convicted of a homicide, the ruling does specify that such sentences should be reserved for the worst offenders and the worst cases.
' This is that' éxact case.
At the resentencing hearing, the defendant presented no witnesses, though he did present the court with copies of letters, written .on the defendant’s behalf, by his family, friends, and pastor.[2]
The defendant argued that his behavior did not put him in the category of the worst offenders or the worst cases because:
h* he acted “immaturely and recklessly”; .
• his idea to shoot up the Adams home 1 over a feud was “stupid” and showed bad judgment, but he only meant to scare Adams;
• he did not torture the victims or act cruelly or maliciously;
• he did not know that anyone was at home, so he was unaware of the victim’s vulnerability;
• he showed he was remorseful for1 his “foolish” behavior by his statement to detectives after his arrest; and
• he acknowledged that he had been “mouthing off’ and making threats to deputies while incarcerated at the Caddo Correctional Center, but he did not actually do anything violent,
*1072 The defendant also argues' that he should not even be sentenced to life with eligibility for parole, because La. R.S. 15:574.4 precludes parole consideration until after serving a minimum of 35 years in prison, which he asserts is a mandatory sentence, in contravention of Miller.-
The defendant argues for a sentence according to our homicide of manslaughter (La. R.S. 14:31), which requires, when' a victim is under age 10, a sentence' of 10 to 40 years at hard labor without benefit of probation or suspension of sentence.
The victim’s mother, Antonia Reed, his grandmother, Reva' Whitaker, and his aunt, Alyssa Reed, all testified about the impact of LeGary’s murder on themselves and the family. They said that the two young boys, ages four and five at the time of the shooting, remember everything and remain traumatized by the memory of being shot at in the middle of the night and their baby brother being killed. One child still has trouble sleeping. The parents still struggle from the loss of their child. Their home was severely Rdamaged, and the family was traumatized' and financially devastated from the shooting.
The state further argues that:
• defendant’s act of procuring the military assault weapons was not some impulsive decision by a reckless teenager, but instead a planned retaliation; ;
• there was a light on in the house, so he knew someone was home;
• he knew any victim would be. vulnerable at 4:00 a.m.;
• he did not verify that his intended target was there alone, so he risked killing . several people by firing into the small home;
• he fired 15 shots into the Adams home with a military assault weapon;
• he bragged that he “got” someone in the shooting; and
• this defendant is one of the worst of offenders.
The court gave thé defendant the opportunity . to make a statement but he declined, requesting that his, attorney express his sorrow. ,
The same judge presided over the trial, the sentencing, and resentencing. ■ The trial judge remarked that in his original sentencing he had extensively addressed the sentencing factors hi La. C. Cr. P. art. 894.1, and found no mitigating circumstances. ' Anticipating future legislation that might grant parole eligibility, the judge stated that time had hot changed his view that this defendant should spend the remainder Of this life behind bars.
The following items were reviewed by the court for the hearing: the transcript from the prior sentencing hearing; the PSI report; the defendant’s statement; supplemental filings relative to resentenc-ing; the defendant’s disciplinary record from Caddo Correctional Center; and letters submitted on the defendant’s behalf.
UThe defendant was 17 years old when he murdered this baby. He had a ninth grade education, and he took Ability, a prescription medication.[3]
.The defendant’s lengthy discipline record while incarcerated at the Caddo. Correctional Center, prior to his first sentencing reflects an established pattern of refusal to obey rules and regulations, as well as cursing and threats of violence to the deputies. The transcript of the first sentencing hearing reflects that this pattern continued unabated. In court, the court observed the defendant:
• “mouthing off’ to the court’s bailiff;
*1073 • refusing to be fingerprinted; and
• declining to sign the indictment.
The court noted, but did not discuss, the contents of the letters.
The court reviewed the case of Miller v. Alabama, supra, and its individualized sentencing requirement for juvenile offenders convicted of homicide. The court noted that Miller and the' corresponding state statute, La. C. Cr. R. art. 878;1, require a hearing to allow the parties the opportunity to present evidence related to the offender’s youth' and youth-related characteristics and circumstances that are related to the offense, for the court’s consideration in sentencing. ; This allows the court to consider whether the defendant and the offense fall into the categories of worst offender and worst case, and determine if a life without eligibility for parole is appropriate for that particular juvenile defendant under the circumstances and in light of the offender’s youth.
IryA-t the second sentencing hearing, the court concluded that:-
• this defendant’s age was not a mitigating circumstance, in light- of the evidence presented and the defendant’s juvenile court records;[4]
• at the time of the shootings, the defendant was old enough and had enough experience to discern right from wrong and knew thaf. firing a military assault weapon into a home where people were • ■ sleeping was wrong;
• the defendant chose to do it anyway and then bragged about it;
• there were nó mitigating circumstances and this defendant was one of the worst of offenders, and the crime was one of the worst crimes imaginable; and
• the defendant’s actions deserve a life ■ sentence without benefits.[5]
The defendant filed a motion to reconsider sentence, 'arguing that the court failed, to consider that he did’ not actually commit any acts of violence against the correctional center deputies, did not attempt to escape, and did not disrupt any court proceedings. The motion was denied.
CONSTITUTIONAL EXCESSIVENESS
On appeal, the defendant argues that' he was sentenced to life without parole .without, a “substantively meaningful” Miller hearing, as it did not comply with the spirit and purpose of Miller. He argues that.there were.no witnesses presented on his behalf, but just a brief argument by counsel that he should be allowed a shorter sentence that would give him an opportunity for redemption and rehabilitation.
|70ur law on the review of exces-siveness, claimsis'well settled;[6]
*1074 .The, .Supreme Court has held that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without the possibility of parole for juvenile offenders convicted of homicide, stating that “a judge or jury must have the opportunity to consider mitigating .circumstances before imposing the harshest possible penalty for juveniles.” Miller, 132 S.Ct. at 2475.
IsMiller did not categorically preclude life without parole for juveniles. State v. Fletcher, 49,303 (La.App.2d Cir.10/1/14), 149 So.3d 984, writ denied, 2014-2205 (La.6/5/15), 171 So.3d 945. It merely requires that a sentencing court consider mitigating.facts related to the juvenile’s youth before imposing a life sentence without benefit of parole. Id.
In response to Miller, our legislature enacted La. C. Cr. P. art. 878.1, which requires a trial court to hold an evidentia-ry hearing before sentencing a juvenile convicted of murder to determine whether parole eligibility is, appropriate in light of aggravating and mitigating evidence and the defendant’s age. Sentences imposed without parole eligibility should normally be reserved for the worst offenders and the worst cases. La. C. Or. P. art. 878.1; State v. Fletcher, supra.
The.crux of the defendant’s argument is that this sentencing hearing did not comply with Miller because (1) the trial attorney failed to present any witnesses on the ■ defendant’s behalf;’ and .(2) the court did not address the defendant’s home environment, his relationships with family and friends, his academic history, or any of his mental health issues. . .
We find that the court did not abuse its discretion in sentencing this stone-cold killer to life imprisonment without benefits.
The court exhaustively reviewed the sentencing factors under La. C. Cr. P. art. 894.1 and complied with the doctrine sot forth in Miller, as codified by La. C. Cr. P. *1075 art. 878.1. The PSI was reviewed, and the defendant’s educational, social, work and criminal history were thoroughly explored.
InThe court spared no effort in deciding upon this sentence, which, when viewed in light of the harm done to society, does not shock the sense of justice.
This record reveals a defendant who willingly participated in a senseless shooting, resulting in the murder of an innocent baby and endangering the lives of several other innocent people.
The sentence of the trial court-is not cruel and unusual punishment and is certainly not excessive. The sentence is just and fair, thoroughly earned, and' no' abusé of discretion. -
CONCLUSION
The defendant’s conviction and sentence are AFFIRMED. '

. State v. Williams, 47,146 (La.App. 2d Cir. 6/20/12), 93 So.3d 830, writ granted in part and denied in part, 2012-1766 (La.3/8/13), 108 So.3d 1169.

. At oral argument, we requested counsel to supplement the record with the letters, which we have now reviewed. The letters were from Davllon Henderson, Ciarra Williams, Devin Williams, Maty Williams, and Rev. Joshua Williams,

. Ability is an atypical antipsychotic, used to treat depression, bipolar disorder, schizophrenia,- and irritability associated with autistic disorders. ■

. The court noted that the defendant’s Caddo Correctional Center records were "an inch thick,” which the court deemed "very important.”

. Among other things, the court found that the defendant injected himself into a feud between other people, without provocation, and fired 15 rounds into the house.

. The trial.court haswide discretion in imposing sentence within statutory limits, and therefore a sentence will not be set aside as excessive unless the defendant shows the trial court abused its discretion. State v. Hardy, 39,233 (La.App. 2d Cir. 1/26/05), 892 So.2d 710; State v. Young, 46,575 (La.App. 2d Cir. 9/21/11), 73. So.3d 473, writ denied, 2011-2304 (La.3/9/12), 84 So.3d 550. A -trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case,.and, therefore, is given broad discretion in sentencing. State v. Zeigler, 42,661 (La.App. 2d Cir. 10/24/07), 968 So.2d 875. The reviewing court does not determine whether another sentence would have been more appropriate, but whether the trial court *1074 abused its discretion. State v. Esque, 46,515 (La.App. 2d Cir. 9/21/11), 73 So.3d 1021, writ denied, 2011-2347 (La.3/9/12), 84 So.3d 551.
An excessive sentence is reviewed by examining whether the trial court adequately considered the guidelines established in La. C. Cr. P. art, 894.1 and whether the-sentence is constitutionally excessive. State v. Gardner, 46,688 (La.App. 2d Cir. 11/2/11), 77 So.3d 1052.
A review of the sentencing guidelines does not require a listing of évery aggravating or mitigating circumstance; the trial court need only articulate a factual' basis for the sentence. State v. Cunningham, 46,664 (La.App. 2d Cir. 11/2/11), 77 So.3d 477. The defendant’s personal history and criminal record, as well as the seriousness of the offense are some, of Ae elements considered, but Ae trial court is not required to weigh any specific matters over oAer matters. State v. Moton, 46,607 (La.App. 2d Cir. 9/21/11), 73 So.3d 503, writ denied, 2011-2288 (La.3/30/12), 85 So.3d 113; State v. Caldwell, 46,645 (La.App. 2d Cir. 9/21/11), 74 So.3d 248, writ denied, 2011-2348 (La.4/27/12), 86 So.3d 625. All convictions and all prior criminal activity may be considered as well as oAer evidence normally excluded from Ae trial. State v. Platt, 43,708 (La.App. 2d Cir. 12/3/08), 998 So.2d 864, writ denied, 2009-0265 (La.11/6/09), 21 So.3d 305.
Maximum sentences are generally reserved for Ae worst offenses and offenders. State v. Taylor, 41,898 (La.App. 2d Cir. 4/4/07), 954 So.2d 804.
Constitutional review turns upon whether the sentence is illegal, grossly disproportionate to Ae severity of Ae offense or shocking to the sense of justice. State v. Lobato, 603 So.2d 739 (La.1992); State v. Livingston, 39,390 (La.App. 2d Cir. 4/6/05), 899 So.2d 733; State v. White, 37,815 (La.App. 2d Cir. 12/17/03), 862 So.2d 1123.
Under constitutional review, a sentence can be excessive, even when it falls within statutory guidelines, if the punishment is so grossly disproportionate to the severity of Ae crime Aat it shocks Ae sense of justice and serves no purpose oAer Aan to inflict pain and ■ suffering. State v. Fatheree, 46,686 (La.App. 2d Cir. 11/2/11), 77 So.3d 1047. .